In the Matter of CAMPO CORPORATION et al., Petitioners, against BENJAMIN F. FEINBERG et al., Constituting the Public Service Commission of the State of New York, et al., Respondents.

Third Department, January 9, 1952.

*Harold J. Treanor* and *Morway Picket* for Campo Corporation and others, petitioners.

*Charles G. Blakeslee* and *John J. Donohue* for 219 West 81st St. Corporation, petitioner.

*Jacob H. Goetz, Cameron F. MacRae* and *Arthur L. Webber* for Consolidated Edison Company of New York, Inc., respondent.

*Lawrence E. Walsh,* counsel to the Public Service Commission (*George H. Kenny, Frank C. Bowers, Samuel R. Madison* and *Arthur Brooks* of counsel), for Public Service Commission, respondent.

FOSTER, P. J. These are consolidated proceedings under article 78 of the Civil Practice Act to review a determination and order of the Public Service Commission which authorized the respondent Consolidated Edison Company of New York, Inc., to cease selling electric current to landlords for the purpose of resale to residential tenants.

This practice, the discontinuance of which the commission has authorized, is commonly called submetering. The owner or operator of a building buys current from a public utility at the wholesale rate and resells it through separate meters to individual tenants, usually at a retail rate. It is a practice that began some forty years ago in the city of New York, and was originally encouraged by utilities to meet competition from privately operated electric plants. Residential submetering was prohibited in the boroughs of Brooklyn and Queens in 1928, but has never been forbidden in the boroughs of Manhattan and The Bronx.

In May, 1946, the commission instituted a comprehensive investigation into the rates, charges, classifications and regulations of the Consolidated Edison Company which supplies practically all of the electricity used in the city of New York. In

November of the same year this utility filed a new tariff, reducing its service classifications from fourteen to four. It further proposed to simplify its classifications by extending the prohibition against submetering, then existent in Brooklyn and Queens, to Manhattan and The Bronx. The commission might have permitted these changes to have gone into effect within thirty days without a public hearing (Public Service Law, § 66, subd. 12). Instead it requested the company to postpone the effective dates thereof and incorporated the proposed changes in the rate proceeding then pending. Hearings in the rate case were closed in December, 1948, and a temporary 10% reduction in all classes of service was ordered.

Subsequently and before final rates were established, and because the company refused to postpone longer the effective date of the new tariffs it had filed, the commission instituted, as a matter of procedural convenience, a new or supplemental proceeding which had to do solely with the company's proposed changes in its rate structure. In this proceeding the commission permitted the changes in rate structures as proposed by the company in November, 1946, which included a prohibition against submetering in the boroughs of Manhattan and The Bronx. The effective date thereof was January 1, 1951, with a six months' grace period. During this period extensive complaints were made concerning the prohibition against submetering, whereupon the commission ordered additional hearings. Notice was given to all those who had complained and to all parties who had appeared in the comprehensive rate case. The hearings began on June 5, 1951, and were concluded on June 22, 1951. At the first hearing notice was given to those who appeared that certain testimony and exhibits from the comprehensive rate case would be incorporated in the new record, and their counsel were informed that they would have a reasonable opportunity to supplement or counter the testimony so incorporated. Both the submeterers and the company offered testimony which was received. A request of the submeterers for an adjournment of six months was denied; the hearings were concluded, and the commission made the determination and entered the order under review.

The action of the commission is attacked essentially on three grounds: (1) that it acted without power in making such determination and order; (2) that its determination was arbitrary and unreasonable, and (3) that it failed to give petitioners an adequate opportunity to be heard.

Before discussing these grounds of attack it should be emphasized perhaps that petitioners are not public utilities; they are the owners or operators of real property and customers of the respondent Consolidated Edison Company.

The Public Service Law gives to the commission the very broadest of powers to regulate rates, service classifications and regulations of a corporation which sells electricity to the public (Public Service Law, §§ 65, 66). Indeed it is not too much to say that in this respect the commission is the alter ego of the Legislature (*Matter of International Ry. Co.* v. *Public Service Comm.*, 226 N. Y. 474; *Matter of Brooklyn Union Gas Co.* v. *Maltbie*, 245 App. Div. 74). Despite these broad powers the commission concedes that it has no jurisdiction over the activities of submeterers. To quote its own language: "under the existing provisions of the Public Service Law, the regulatory authority of this Commission ceases so far as tenants of a submetering customer are concerned at the termination point of the company's service, which is usually at the company's master meter on the submeterer's premises". This gap in regulation presents a somewhat anomalous situation. The submeterer acts in effect as a public utility in selling current to his tenants, and yet is entirely free from regulation.

Petitioners defend this practice by asserting that the owner of a building has the statutory right to purchase all the electricity needed to light his entire building, and that his private contracts with tenants for the disposal of current are no concern of the commission. The statutory right cited is section 12 of the Transportation Corporation Law, which provides in part: "Upon written application of the owner or occupant of any building within one hundred feet of * * * a line of an electric corporation or gas and electric corporation, appropriate to the service requested, and payment by him of all money due from him to the corporation, it shall supply * * * electricity as may be required for lighting such building".

It is pointed out, however, by the commission and the respondent company that this section of the statute imposes no duty to supply current for resale; nor is there any limitation therein on the power of the commission to regulate service classifications and impose reasonable conditions in connection therewith, so far as the utility is concerned. We think these observations furnish the answer to the naked issue of power, and resolve the seeming paradox: that while the commission may not regulate submeterers it may prohibit the practice of submetering. It may not regulate submeterers simply because the latter are not

classed as public utilities by the Public Service Law, and its powers are drawn solely therefrom. But this lacuna in no way diminishes its power to determine reasonable classifications, regulations and practices under which a utility, such as the respondent company, renders service. Thus the Public Service Law provides in part:

" The commission shall determine and prescribe * * * just and reasonable rates, charges and classifications * * * for the service to be furnished · * * * and the just and reasonable acts and regulations to be done and observed " (§ 66, subd. 5).

" The commission shall have power to require each * * * electric corporation to establish classifications of service based upon * * * the purpose for which used * * * and upon any other reasonable consideration, * * * and it shall have power, either upon complaint, or upon its own motion, to require such changes in such classifications * * * as it shall determine to be just and reasonable " (§ 66, subd. 14).

From the foregoing we reach the conclusion that it was within the regulatory power of the commission to direct the respondent company not to furnish electric energy otherwise than direct to consumers and through company meters. Nor did encouragement by predecessors of the respondent company of the practice of submetering, and tolerance thereof by the commission for some forty years, estop the latter from asserting its regulatory power. It could not be estopped from exercising its statutory authority to regulate the practices and rate classifications of public utilities (*Matter of Rochester Tr. Corp.* v. *Public Service Comm.*, 271 App. Div. 406, motion for leave to appeal denied 296 N. Y. 1061).

Petitioners have no vested rights, constitutional or statutory, in the practice of submetering (*Lewis* v. *Potomac Elec. Power Co.*, 64 F. 2d 701; *Ten Ten Lincoln Place* v. *Consolidated Edison Co.*, 190 Misc. 174, affd. 273 App. Div. 903). In other States the prohibition thereof has been upheld (*Sixty-seven South Munn, Inc.,* v. *Board of Public Utility Comrs.*, 106 N. J. L. 45, affd. 107 N. J. L. 386; *Florida Light & Power Co.* v. *State of Florida ex rel. Malcolm,* 107 Fla. 317). The case of *Ambassador, Inc.*, v. *United States* (325 U. S. 317) while not precisely analogous, indicates the same trend. No case has been cited which holds that anyone has a statutory or common-law right to purchase electric current from a public utility and resell it, and to compel a utility to provide service for that purpose. In addition it appears that the practice, while tolerated, has been criticized

many times by the commission. Whatever investments petitioners may have in the practice must be held to have been made at their own risk in view of the foregoing. The practice of submetering was always under the shadow of the regulatory power which the commission might exercise over the rates and classifications of public utilities.

Assuming however that the commission, as a general proposition, had power to prohibit submetering, petitioners argue that it could not do so in this case because it had fixed temporary rates under section 114 of the Public Service Law, and hence it had exhausted its power to direct other changes in the rate structure of the company until it had fixed permanent rates. In other words, the commission could not act until it had finally determined the comprehensive rate case it had initiated. It is true that the section cited provides that temporary rates shall be effective until final rates have been established, but we do not construe its language as narrowly as petitioners urge. Rate making is more or less a continuous process, and we doubt if it was the legislative intent to chain the commission's hand against modifications it might find desirable in the public interest. The plural terms used is some indication to the contrary. We might also note that in our opinion this is an issue which only a utility concerned may properly raise. But in any event we fail to see how the point has any controlling significance here because the temporary rate order itself embraces by reference a prohibition against residential submetering. So it would appear that there is nothing inconsistent between that order and the order under review, the latter being a final segment of the rate proceeding.

If the commission's determination has any rational basis that would appeal to a reasonable mind it cannot be held by the courts to be arbitrary and unreasonable. We are not concerned with the economic niceties of the practice which the commission has condemned. We may only determine whether there is any reasonable support in the record for the action taken; or to put it another way in order to annul the order of the commission on the ground that it was arbitrary we should have to say as a matter of law that no substantial reason whatever appears in the record to sustain the order and determination under review. We cannot justly say that. The hearing commissioner wrote a long and comprehensive memorandum which sets forth the findings and reasons for the commission's action. It was found that the practice of submetering is parasitic and undesirable, competing with the central service station by selling to ultimate

consumers who would be otherwise customers of the company. Profits of the submeterer would otherwise be available for the reduction of rates to other customers or aid in maintaining the level of rates in a period of rising costs. Under the present provisions of the Public Service Law service to the customers of a submeterer cannot be regulated although such users should be entitled to the same protection as a direct user of the company's service. These findings are not only supported by the record but, in our opinion, are almost self-evident propositions, requiring but slight proof to support them.

Finally, we are unable to find any reasonable basis for petitioners' complaint that they were denied an adequate hearing. In the first place it is extremely doubtful whether they were entitled, as a matter of right, to any hearing at all. As customers they had no vested rights, statutory or otherwise. Section 71 of the Public Service Law requires the commission to make an investigation upon the written request of twenty-five customers but does not require a hearing. Subdivision 12 of section 66 authorizes a hearing upon rates filed by a utility company but does not require it. In dealing with complaints section 72 requires notice to the utility involved but not to customers. The general scheme of the Public Service Law is that the commission shall, in the public interest, regulate utilities, and ordinarily it is only the latter who are entitled to hearings. The intervention of a customer is a matter of discretion with the commission (*New York City* v. *New York Tel. Co.*, 261 U. S. 312; *City of New York* v. *Consolidated Gas Co.*, 253 U. S. 219). In the present case the commission, in the exercise of its discretion, gave petitioners the right to be heard in a proceeding which was merely supplemental in character to the main rate case. Those who had appeared in the latter case were given notice and also those who complained later. A part of the record in the main rate case, dealing with residential submetering, was incorporated in the latter record, but counsel for petitioners were given an opportunity to supplement or counter such testimony. This procedure is not unusual in administrative hearings, but in any event we think it was discretionary with the commission in view of the issues and circumstances of the case.

The determination and order should be confirmed, with $50 costs and disbursements.

HEFFERNAN, BREWSTER, BERGAN and COON, JJ., concur.

Determination and order confirmed, with $50 costs and disbursements. [See *post,* p. 835.]