In the Matter of CITY OF NEW YORK, Petitioner, against BENJAMIN F. FEINBERG et al., Individually and Constituting the PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, et al., Respondents.

Supreme Court, Special Term, Albany County, April 1, 1955.

*Adrian P. Burke, Corporation Counsel* (*James J. Thornton* of counsel), for petitioner.

*Joseph J. Doran* for Public Service Commission, respondent.

*Saxe, Bacon, O'Shea & Bryan* for Long Island Rail Road Company, respondent.

Schirick, J. This application is made by the City of New York, pursuant to article 78 of the Civil Practice Act, to review and annul the determinations made by the Public Service Commission on August 5, 1954, which approved the application of the Long Island Rail Road Company to amend its certificate of incorporation and qualified it as a railroad redevelopment cor poration pursuant to article 7 of the Railroad Law (L. 1954, ch. 824). It is the contention of the city, as set forth in its petition and developed in its briefs and upon the argument, that such determinations were made in violation of the rights conferred upon it by section 108 of the Public Service Law.

The Public Service Commission and the Long Island Rail Road Company, respondents in this proceeding, have served their respective answers, each containing objections in point of law upon which their motions to dismiss are based.

Article 7 of the Railroad Law was enacted at a special session of the Legislature called to consider specifically the affairs of the Long Island Rail Road Company. Such railroad had been operated by a trustee in bankruptcy since 1949. By 1951 its affairs had become sufficiently critical to require by special legis- lation the creation of a Long Island Transit Authority to make detailed studies of the operation of a facility deemed " indis- pensable to the unity and continued existence of the state " (Public Authorities Law, § 1702, subd. 3). Continued financial deterioration of the affairs of the railroad required repeated applications for fare increases, addressed both to the Public Service Commission and to the Interstate Commerce Com- mission.

At a joint meeting of the Public Service Commission and the Long Island Transit Authority held on May 20, 1954, the latter advanced a plan for the rehabilitation of the railroad. This called for the termination of the bankruptcy, the continued opera- tion of the railroad under private ownership, the improvement of its equipment and facilities and various details required to finance the project. The latter included a fare increase and certain tax concessions.

Such plan became the subject of immediate and thorough investigation and consideration by the Public Service Commis- sion. It was formally promulgated by the Long Island Transit Authority on May 26th and enabling legislation recommended. On June 7th the Governor embodied the features of the plan in a letter to the members of the Legislature and summoned them to a special session to be held on June 10th to act thereon. The plan was incorporated in the statute enacted at such special

session on June 14th. The statute, while phrased in language of general application, was unquestionably enacted as a legislative remedy for the emergency then confronting the Long Island Rail Road Company.

It set forth in section 300 the "legislative policy and purposes" as follows: "It is hereby declared to be the policy of the state to encourage and bring about the rehabilitation, improvement, and continued operation by private enterprise of the facilities of any domestic railroad corporation which now or hereafter is a debtor in proceedings under the bankruptcy laws of the United States and which in the calendar year preceding the institution of such proceedings had passenger miles within the state of five hundred million or more, and to encourage and bring about the rehabilitation of such corporations in order to enable them, with private capital and under private management, to furnish safe, efficient, and adequate transportation service to the people of the state; and it is hereby further found and declared that the rehabilitation and continued operation of such corporations by private enterprise and enabling such bankruptcy proceedings to be terminated are matters of public concern; that it is necessary to create, with adequate safeguards, inducements and opportunities for the employment of private investment in such rehabilitation and continued operation; that a railroad redevelopment corporation qualifying hereunder serves a public purpose; that provision must be made for the granting of partial tax exemption to such corporations; that the commission and any other state agency empowered to act under section three hundred three are hereby declared to be the agencies and instrumentalities of the state to carry out the policy and purposes herein recited; and the necessity in the public interest for the provisions of this article is hereby declared as a matter of legislative determination."

In order to effectuate such policy and purposes, it gave directions to the appropriate administrative agencies as follows: "The commission and other state agency, if any be authorized by law to do so, shall give a certificate of approval of the qualification of a railroad corporation as a railroad redevelopment corporation if, in the judgment of the commission and such other agency, such qualification will carry out the policy and purposes of section three hundred." (Railroad Law, § 303, subd. 1.)

The tenor and spirit of the statute, and the history of its enactment at a special session hurriedly convened at the call of the Governor, give evidence of its purpose to provide a speedy solution of the emergency then confronting the Long Island

Rail Road and the users thereof. Serious accidents which had recently occurred on the railroad, and which many had attributed to the defective condition of its equipment, added further to the note of urgency.

Under the circumstances, as evidenced by the language, as well as the history of the enactment, no intention can be found to require that hearings be held by the Public Service Commission in advance of the issuance by it of a certificate of approval. Prompt qualification under the act is contemplated. The "intricate, involved, tedious proceeding, extending into months and years" (*Matter of Bronx Gas & Elec. Co.* v. *Maltbie*, 271 N. Y. 364, 371) which so frequently characterizes public hearings before the commission is to be avoided.

The commission had, however, ample opportunity to study and consider the proposed plan. Its general features, as has been noted, were proposed at the joint meeting of May 20th. The staff of the commission immediately commenced its study. The report of the Long Island Transit Authority to the Governor, upon which he based his recommendation to the special session of the Legislature, was a full exposition of its features and advantages. On June 28th a hearing was held before the bankruptcy court, at which the commission and the city were represented. Full consideration was then given to various aspects of the plan and the city's objection thereto.

It is the conclusion of the court that no hearings were required to be held by the Public Service Commission. The statute does not contemplate hearings. None are specifically called for. None were constitutionally required under the facts and circumstances here present. (*Matter of Campo Corp.* v. *Feinberg,* 279 App. Div. 302, 308, affd. 303 N. Y. 995; *Matter of Hecht* v. *Monaghan,* 307 N. Y. 461; *Coleman* v. *Miller,* 307 U. S. 433.)

The constitutionality of the Railroad Redevelopment Corporations Act has now been judicially sustained. (*Gerosa* v. *Long Island R. R. Co.,* 207 Misc. 360.)

While the city's original demand, as set forth in its letter to the commission of June 24, 1954, requested that the commission hold public hearings, it does not now contend that these were required. Neither does it attack the merits of the plan as such. It has narrowed its attack to a single contention: that it should have been permitted to appear and be heard, as a party, pursuant to section 108 of the Public Service Law.

Serious question has been raised by the respondents whether the city should be permitted thus to shift its ground in a petition served more than four months after its demand of June 24th

and more than two and one-half months after the qualification of the railroad as a redevelopment corporation. In the intervening period the record conclusively shows that the railroad had, upon the strength of its new status, made large commitments for the purchase of passenger cars, supplies and materials. It had paid various pre-bankruptcy claims and thereby materially altered its position with respect to the different classes of its creditors. It had embarked upon an extraordinary maintenance program. All these things, and others, it would not have done but for its changed status as a redevelopment corporation.

During all this time the only recorded objection of the city was its insistence that public hearings be held. This contention it has now abandoned. The doctrine of laches should bar a shifting of its position at this time and under these circumstances.

It is, moreover, the conclusion of the court that section 108 has no application. By its terms, a municipal corporation is accorded " the right to appear as a party before the commission or before any court *in any action or proceeding* involving rates, service or other matters affecting the municipal corporation or any of its residents." (Italics supplied.) Was the act of the commission in affixing its approval to the qualification of the railroad as a redevelopment corporation, pursuant to the new statute, performed in an action or proceeding? The court is of the opinion that it was not.

No proceeding was instituted by the commission and none was required by the statute. The act, as has been stated, required no hearing. There was no disposition of a controverted issue such as is implied in the terms " action " or " proceeding ". The statute imposed upon the commission and its staff the responsibility, after thorough study and consideration, to determine the qualifications of a railroad pursuant to its terms. The responsibility rested upon the commission alone. In the discharge thereof, it was not required to institute or to permit a contested proceeding. Such requirement would not be consistent with the purpose of the act to provide a prompt remedy for a condition calling for expeditious action.

The court concludes that the responsibility reposed in the commission by the Railroad Redevelopment Corporations Act was one to be discharged by it after full consideration and examination by its staff, but without any requirement of instituting or permitting an adversary proceeding. Section 108 of the Public Service Law has, accordingly, no application.

The petition is dismissed.