In the Matter of MERRIEWOLD CLUB, INC., Appellant, against PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK et al., Respondents, and REGINA CALDWELL et al., Intervenors-Respondents.

Third Department, June 2, 1960.

522

*Homer H. Breland* for appellant.

*Kent H. Brown* and *George H. Kenny* for Public Service Commission, respondent.

*Le Boeuf, Lamb & Leiby* (*Cameron F. MacRae* and *H. Richard Wachtel* of counsel), for Orange and Rockland Utilities, Inc., respondent.

*Edward Potter* for Regina Caldwell, intervenor-respondent.

*Gilman & Gilman* (*Benjamin A. Gilman* of counsel), for Frank Cassano and another, intervenors-respondents.

HERLIHY, J. Petitioner appeals from an order dismissing an article 78 proceeding brought to review an order of the Public Service Commission directing the Orange and Rockland Utilities, Inc., to terminate electric power service to the Merriewold Club, Inc., unless it shall have ceased to distribute or dispose of electricity to premises not owned by it or qualified directly or through a subsidiary as an electric corporation.

The petitioner-appellant, hereinafter referred to as the " Club ", is a nonprofit membership corporation, organized and operated solely for the benefit and enjoyment of its members. It is located in Sullivan County on an 1,800-acre tract of land known as Merriewold Park and within its boundaries for the exclusive enjoyment of its members are a clubhouse, two lakes, bathing beach, tennis courts, help's quarters and considerable vacant land. All of this acreage belongs to the Club except approximately 20% individually owned by Club members

and the further exception from the latter amount of acreage of two lots presently owned by the nonmember intervenors. The property is located in an isolated mountainous region and many years prior hereto the Club, at its own cost and expense, built a power line on its property to highway Route No. 42 to connect with the power lines of the respondent Orange and Rockland Utilities, Inc., hereinafter referred to as the "Power Company". At the entrance of this line to the Club property is a meter of the Power Company used for measuring all of the electrical power consumed by the Club in its various capacities.

For years the Club made a direct metering charge to its members for power, but in 1955, after receiving notice of violation of the tariff regulations of the Power Company, changed to a flat fee of $80 per year for the "maintenance and operation of its electric line" and refused to furnish electrical service to the nonmember intervenors herein. (They complained to the Public Service Commission of their inability to obtain electrical service from the Club or the Power Company.) In 1957 the board of directors established a flat fee of $610 per year for all services, with some exceptions not applicable hereto. An investigation was undertaken by the commission to determine whether the Power Company was supplying electrical service to the Club in violation of its tariff provisions which provided: "(1) SUBMETERING: Electric service will not be supplied under any Service Classification of this rate schedule for resale, remetering (or submetering) or other disposition to residential tenants or residential occupants * * * except that any customer may furnish electric energy for use of his tenants or occupants provided that the customer shall not resell, make specific charge for, or remeter (or submeter) or measure any of the electric energy so redistributed or furnished."

The investigation resulted in the order which is the subject of this appeal, with one member dissenting.

In *Matter of Campo Corp.* v. *Feinberg* (279 App. Div. 302, 303, affd. 303 N. Y. 995) it was stated that the purpose of submetering applied as where "the owner * * * of a building *buys current* from a public utility at the *wholesale rate* and *resells it* through separate meters to individual tenants, *usually at a retail rate*." (Emphasis supplied.)

The commission has taken various excerpts from the tariff and attempted to show it applied to the present situation, for example "or other disposition". The tariff provisions should be read "according to the natural and obvious import of their

language without resorting to a subtle or forced construction either limiting or extending their effect." (*Cooper-Snell Co.* v. *State of New York,* 230 N. Y. 249, 255; *Matter of New York Edison Co.,* 5 P. U. [R. N. S.], 313, 316–317.) By the application of this rule here the conclusion is evident that the present unusual membership club arrangement cannot be classified as " residential tenants or residential occupants ". The facts here are the exception rather than the rule as covered by the tariff regulations. If we were to adopt the interpretation as suggested by the commission we would necessarily go beyond tenant and occupant and classify all manner of " residents " as included. Residential is used to distinguish commercial and other nonresidential occupants. The members are neither the tenants nor the occupants of the Club so any distribution by it to its members does not violate the tariff provisions.

The tariff is further inapplicable under its exception, as a matter of a flat charge used by the Club in *assessing* its members *dues* does not come within the meaning or intent of a " customer shall not resell, make specific charge for, or remeter (or submeter) or measure any of the electric energy so redistributed or furnished." That the Club had the right to charge its members over-all dues is beyond dispute.

There is no claim that a profit was made by the Club from furnishing electrical power to either members or nonmembers thereof. Admittedly all of the power that came from the Rockland and Orange Utilities, Inc., generated through one meter owned by the Club but it was for the use of the Club and its members contained within the Club property.

The real difficulty is that the responsibility of furnishing electrical service to the intervenors is that of the Power Company and not of the Club but the large expenditures necessary to such accomplishment in return for the income makes it unwarranted. The simple solution is the one here sought but in which the Club does not acquiesce.

In *Matter of Sailors' Snug Harbor* v. *Feinberg* (285 App. Div. 22) which concerned the right of submetering to a new building replacing a demolished building that had such right, reference was made to permission given the Port of New York Authority to submeter at Idlewild Airport. At pages 26 to 27 the court said: the utility could not be required to render direct service through these [Port of New York Authority] facilities, or as a practical matter be required to build parallel installations. *The tariff was not intended to prohibit submetering where the utility itself was unable to furnish direct service to the consumer."* (Emphasis supplied.)

If the tariff provisions could be interpreted as ambiguous, such ambiguity would be resolved against the commission (*Bianchi* v. *Sears, Roebuck & Co.*, 1 N Y 2d 63, 69).

Finally, from the present record, we are unable to classify the Club as an " electric corporation ". The commission in its brief sets forth that it does not seek in this proceeding to have the Club declared a public utility.

In what appears to be changing conditions in the locale of the Club, the practical solution to the problem herein presented remains by way of some adjustments among the parties. However, the legal involvements proposed by the determination of the commission are arbitrary.

The order dismissing the petition should be reversed, and the relief prayed for granted.

BERGAN, P. J., COON, GIBSON and REYNOLDS, JJ., concur.

Order dismissing petition reversed, on the law and facts, and the relief prayed for granted, with $50 costs.