In the Matter of TRI-CITY TELEPHONE COMPANY, INC., Petitioner, v ALFRED E. KAHN et al., Constituting the Public Service Commission of the State of New York, Respondents, and NEW YORK TELEPHONE COMPANY, Intervenor-Respondent.

Third Department, October 23, 1975

*Richard E. Doling* and *Seth Towse* for petitioner.

*Peter H. Schiff (John C. Crary* of counsel), for respondents.

*Gerald E. Murray* for intervenor-respondent.

KOREMAN, J. These are proceedings pursuant to CPLR article 78 to review a determination of the Public Service Commission which granted the application for a certificate of public convenience and necessity for the operation of a maritime mobile radio station and ordered the petitioner to execute an interconnection agreement with the New York Telephone Company consistent with the terms of the respondents' order.

Tri-City Telephone Company,. Inc. (Tri-City) is a radio telephone utility under the concurrent jurisdiction of the Federal Communications Commission (FCC) and the Public Service Commission of the State of New York (PSC). It was licensed by the FCC in 1968 to operate a maritime radio station in the area of the Mohawk and Hudson Rivers and presently provides an interconnected service to vessels in waterways within 40 to 60 miles of its transmitter site located in Schenectady, New York, although it does not have an interconnection agreement with New York Telephone Company (NYT). Tri-

City has utilized trunklines leased to one Peter Bakal by NYT since it began operating. NYT and Tri-City have attempted, without success, to effect an interconnection agreement since 1967. The service provided by Tri-City may be described as follows: Using his own station equipment, a caller on a boat contacts the Tri-City operator. The call is received at the Tri-City transmitter site and sent to Tri-City's dispatch center by means of a radio tie line leased from NYT. The Tri-City operator then manually completes the interconnection, transferring the call to the landline system. A call originating from a landline telephone directed to a vessel follows the same route in reverse. The Tri-City operator is involved in all calls from vessels or from the landline network to vessels. Tri-City charges for its air time according to FCC tariff and adds the toll charge to pay NYT for the landline portion of the toll call. The charge for air time is the sole source of revenue to Tri-City for the service it provides its users.

Following public hearings before a hearing examiner, the PSC granted a certificate of public necessity to Tri-City to operate a maritime mobile radio station interconnected to NYT's landline telephone system, conditioned upon (1) the execution of an interconnection agreement between NYT and Tri-City with terms consistent with the economic arrangement advanced by the hearing examiner, (2) filing of a tariff by Tri-City, and (3) filing of a concurrence by Tri-City in NYT's toll tariff. No agreement was arrived at by Tri-City with NYT, and this proceeding was commenced on October 16, 1974.

Proceeding to the merits, the issue presented is whether the determination of the PSC regarding the interconnection agreement is supported on the entire record by substantial evidence. Arguing strenuously that there are no distinctions between the functions of radio telephone companies and landline telephone companies, Tri-City urged that NYT toll charges be divided on the basis of a cost-based formula which is used to divide charges between landline telephone companies. (Referred to as the NASS formula designed to compensate small landline telephone companies for costs in handling toll calls between them and NYT.)

Petitioner's argument was rejected by the PSC which found that the average costs incurred by small independent landline telephone companies in providing toll service are not necessarily relevant to Tri-City's marine radio operation and cannot be used as a basis for division of toll revenues. It was also found

that the landline NASS is not an appropriate or acceptable substitute for a cost-based settlement schedule which considers the unique costs and facilities of marine radio carriers. The PSC also rejected a proposal made by its staff that Tri-City receive a 15% commission on toll revenues received by NYT on interconnected calls on the ground there was nothing in the record to support the proposal and thus it was arbitrary. Concluding that it was not possible on the record before it to decide whether any division of toll call revenues is appropriate between radio-telephone utilities offering marine interconnected service and NYT and that such a determination must await the availability of adequate cost data, the PSC found that, for the present, the proper course to follow was to permit an interconnection agreement between Tri-City and NYT which will compensate adequately each carrier for its investment in interconnected service.

The scope of judicial review of administrative determinations is very limited. There is no occasion for judicial intervention in matters involving the expertise of the PSC in the technical areas of regulating public utilities unless the determination sought to be reviewed is found not to be supported by substantial evidence in the record or by information properly considered. The courts have no right to review the facts generally as to weight of the evidence, beyond seeing to it that there is substantial evidence. (*Matter of County of Orange v Public Serv. Comm. of State of N. Y.,* 37 NY2d 762; *Matter of Pell v Board of Educ. of Union Free School Dist. No. 1,* 34 NY2d 222; *Matter of Campo Corp. v Feinberg,* 279 App Div 302, 307, affd 303 NY 995.) It is clear from the record that the determination of the PSC has a rational basis and is supported by substantial evidence, and, therefore, cannot be disturbed.

We cannot agree with respondents' contentions that this proceeding is premature, and that petitioner has failed to exhaust its administrative remedies. The certificate of public convenience and necessity issued to petitioner becomes effective automatically when it files the required documents, and there will be no further inquiry or question as to the appropriateness of granting the certificate. Thus, the grant of the certificate was a final determination properly reviewable by an article 78 proceeding even though the certificate would not become effective until there was compliance with the procedural requirements. Petitioner is seeking review of only the

ordered terms of the interconnection agreement, and that issue has been finally determined. A full inquiry was had at PSC hearings into the nature of the interconnection agreement, and suggestions by all parties were considered before a decision was reached and adopted as to the terms of the agreement. No further hearings are to be held relating to the general content of the agreement, and it appears that the proceedings were continued for the purpose of permitting the parties to submit an agreement with specific details incorporating the general terms set forth in the decision and order of the PSC. Any further proceedings would relate to and implement the order as presently made, and would not be for the purpose of modifying it in any respect. It is clear, therefore, that the interconnection agreement ordered by the PSC is a "final determination" properly reviewable pursuant to article 78.

We are also of the opinion that petitioner's failure to apply to the PSC for a rehearing (Public Service Law, § 22) does not bar this proceeding, since review may be sought without a rehearing where, as here, the time to make application for a rehearing has elapsed. (CPLR 7801, subd 1.)

The determination should be confirmed, and the petition dismissed, without costs.

Sweeney, J. P., Kane, Larkin and Reynolds, JJ., concur.

Determination confirmed, and petition dismissed, without costs.