■ In the Matter of GLC INVESTMENT COMPANY, Appellant, v PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK et al., Respondents.—Levine, J. Appeal from a judgment of the Supreme Court (Prior, Jr., J.), entered February 6, 1987 in Albany County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent Public Service Commission, *inter alia,* authorizing respondent Lawrence Park Heat, Light and Power Company to cease providing steam service to its customers without reimbursing them for the cost of converting to alternate sources of heat.

Until July 1, 1986, petitioner, an owner of rental property in respondent Village of Bronxville, Westchester County (Village), received both steam and electricity service from respondent Lawrence Park Heat, Light and Power Company (Lawrence Park). The latter served 470 electricity and 16 steam customers in the Village and was wholly owned by Berson Equities, Ltd. Petitioner, along with three other customers, was served by Lawrence Park's Pondfield Road steam line.

Prior to the end of 1985, it became apparent that Lawrence Park's continued provision of utility service was fraught with difficulties. Lawrence Park's electricity customers suffered from power surges and outages and its steam plant leaked. Over the years, and with the approval of respondent Public

Service Commission (PSC), Lawrence Park had abandoned certain portions of its steam system. In addition, the Village was very dissatisfied with the adequacy of Lawrence Park's service and Lawrence Park was operating without liability insurance, which threatened renewal of the Village's own coverage. It was even questionable whether Lawrence Park could pay its outstanding debts. Moreover, the prudence of Lawrence Park's fuel purchase practices was also under PSC investigation.

On October 4, 1985, Lawrence Park filed a petition with the PSC seeking an emergency order permitting its immediate abandonment of service to petitioner and the other steam customers on the Pondfield Road line based on the fact that it would be too costly to repair the deteriorated line. Lawrence Park proposed to reimburse each steam customer for one half of the cost of conversion. However, after the customers responded in opposition to the discontinuance of the line and other developments occurred, the reimbursement offer was withdrawn.

Eventually, after protracted negotiations, Lawrence Park, the Village and the Department of Public Service staff reached a settlement agreement providing for the discontinuance of service by Lawrence Park. Lawrence Park was to discontinue utility service on July 1, 1986 and Consolidated Edison Company of New York, Inc. (Con Ed) was to take over service to the 470 electricity customers. Proceeds from the sale of Lawrence Park's land and power plant building were to be used to pay off its various debts with the remainder accruing to its parent corporation, Berson Equities, Ltd. Lawrence Park was not required to pay any refunds that may be due its customers because of the possible imprudence of its fuel-buying practices. The agreed settlement would not be binding unless approved, in toto, by the PSC.

The outlines of this settlement emerged in the latter part of May 1986 and were subject to comment from Village citizens at a hearing held on May 30, 1986. The main opposition to the settlement came from petitioner and the three other customers served by the Pondfield Road steam line who had filed a complaint in March 1986 seeking to ensure that 50% of their conversion costs would be paid in any abandonment of the system. Accordingly, they objected at the hearing to an abandonment of the steam system without a provision for such contribution. However, the parties to the settlement agreement had been unable to identify a means to establish a fund to defray any portion of the conversion costs.

The Administrative Law Judge (ALJ) reviewing the stipulation concluded that since the settlement was in the best interests of the community it should not be rejected because of the "narrower interests" of the complaining steam line customers. Significantly, the ALJ pointed to the adverse consequences if the settlement was not approved. At its June 25, 1986 session, the PSC issued an order, over petitioner's objections, approving the settlement. The PSC found that, on balance, the agreement would achieve substantial and significant public objectives which clearly outweigh any disadvantages. Subsequently, petitioner commenced the instant CPLR article 78 proceeding to review the PSC's determination. Supreme Court confirmed the determination and dismissed the petition. This appeal followed.

Upon review of the issues presented on this appeal, we find that the judgment of Supreme Court confirming the determination of the PSC and dismissing the petition in this proceeding should be affirmed. Substantively, the PSC acted reasonably and in the public interest in permitting Lawrence Park to discontinue its steam service. Procedurally, the PSC's decision to resolve Lawrence Park's problems through a negotiated settlement rather than through evidentiary hearings was not an abuse of discretion.

Petitioner's contention that the PSC unfairly discriminated against steam customers by failing to provide adequate consideration of, and provision for, their conversion costs in the settlement agreement is without merit. While utility customers are entitled to just and reasonable rates, they do not acquire any property interest in the utility or its funds (*Matter of General Motors Corp. v Public Serv. Commn.*, 95 AD2d 876, 877, *lv denied* 60 NY2d 557). Public Service Law § 83 authorizes the PSC to permit a steam corporation to abandon service, but does not *require* any compensation for customers who must convert (*see, e.g., Matter of Incorporated Vil. of Val. Stream v State of New York Pub. Serv. Commn.*, 107 AD2d 856). Petitioner, in support of its argument, cites cases where the PSC has required some contribution from utilities for customer conversion costs upon abandonment. However, the subject utilities in those cases remained economically viable and were able to finance conversion costs. Lawrence Park was not in the same condition. It had already suffered financial losses and continuation of service became impractical. Lawrence Park's offer to pay 50% of the conversion costs was withdrawn when ensuing circumstances made it more appropriate to cease providing service altogether.

When utility service is discontinued, the economic loss to the utility must be balanced against the public interest *(supra, at 858).* In light of Lawrence Park's generally poor financial condition and the need to expeditiously reach a settlement, the PSC properly concluded that the settlement's failure to provide a conversion contribution did not constitute a sufficient reason to reject the settlement. A decision not to have approved the stipulation before July 1, 1986 would have initiated disputes over the status of Lawrence Park's franchise and who was responsible for serving Lawrence Park's customers. Also of concern was the loss of the Village's liability insurance. Considering all these factors, the PSC decision was rational and supported by the record *(see, Matter of Campo Corp. v Feinberg,* 279 App Div 302, 307, *affd* 303 NY 995).

Petitioner's claim that it was discriminated against because electricity customers were able to receive service from Con Ed without conversion costs while the steam customers had to pay for their own conversion costs is refuted by the fact that Lawrence Park treated all customers equally since it assisted neither electricity nor steam customers. The electricity customers, however, were more fortunate in that Con Ed had a franchise and plant available to serve them, while no similar utility was available to serve the steam customers.

Petitioner's argument that the PSC abused its discretion in allowing remaining funds to be paid to Lawrence Park's parent company instead of establishing a fund for abandoned steam customers is without merit. Lawrence Park did not, in fact, profit when it sold its system. It had over $790,000 in operating losses between 1978 and 1985 and the owner lost a net $1.5 million before taxes on its investment in Lawrence Park. The PSC concluded that these losses made it appropriate for Berson Equities, Ltd., to receive whatever proceeds remained after the outstanding bank loans were satisfied. In considering what return a steam corporation should receive on its investment, the PSC may consider all relevant factors (Public Service Law § 85) and it is "free to entertain or ignore any particular factor, or to assign whatever weight it deems appropriate" *(Matter of Abrams v Public Serv. Commn.,* 67 NY2d 205, 212). Accordingly, the PSC's determination in this regard is neither irrational nor without support in the record *(supra,* at 217-218).

Petitioner's contention that the use of settlement negotiations by the PSC instead of evidentiary hearings violated due process is rejected. There is no statutory right to a hearing on service discontinuance *(see,* Public Service Law § 83). Accord-

ingly, the PSC's determination whether to grant a hearing was discretionary and should only be overturned if arbitrary and capricious *(see, Matter of Campo Corp. v Feinberg,* 279 App Div 302, 308, *supra).* Further, petitioner cites no controverted matters of fact which would have required a hearing *(cf., Mayo v Hopeman Lbr. & Mfg. Co.,* 33 AD2d 310, *appeal dismissed* 26 NY2d 612). Here, the PSC concluded that an expeditious and flexible solution was needed to solve the problems arising out of Lawrence Park's continued existence. The record indicates that the PSC carefully evaluated the claims of the steam customers before adopting the settlement. Moreover, petitioner directly petitioned the PSC for reimbursement and even commented on the settlement before the ALJ. Thus, the PSC was aware of petitioner's arguments.

Finally, petitioner's contention that it was unfairly excluded from settlement negotiations lacks merit. Petitioner's representative attended at least two settlement conferences and the ALJ specifically advised representatives to become involved in negotiations. Petitioner was therefore accorded due process.

Judgment affirmed, with costs. Mahoney, P. J., Weiss, Levine and Harvey, JJ., concur.