******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# PMC PROPERTY GROUP, INC., ET AL. *v.*
# PUBLIC UTILITIES REGULATORY
# AUTHORITY ET AL.
## (AC 39609)

Lavine, Bright and Harper, Js.

*Syllabus*

The plaintiff companies appealed to this court from the trial court's judgment affirming in part the decision of the defendant Public Utilities Regulatory Authority, which found that the plaintiffs had engaged in the unauthorized submetering of electricity and, pursuant to that finding, imposed sanctions. The plaintiffs had installed a heating, ventilation, and air conditioning system in a multifamily apartment building owned and managed by the plaintiff P Co. P Co.'s electric service was measured through an electric company meter that supplied electricity to seven heating and air conditioning outdoor units and the common areas of the building. Two nonutility wattmeters, which were installed after P Co.'s electric company meter, measured the electricity used by the seven outdoor units and provided an input signal to a heating and air conditioning billing program. The plaintiffs billed each tenant for a portion of the heating and air conditioning compressors' electric use in proportion to the thermal use of the rental space of each tenant. Subsequently, the Office of Consumer Counsel and the state attorney general filed a joint petition requesting that the authority investigate possible unauthorized submetering at P Co.'s apartment building. The statute authorizing the authority to regulate submetering ([Rev. to 2011] § 16-19ff, as amended by Public Acts 2011, No. 11-80, § 1) did not provide a definition for submetering, and, thus, in determining that the plaintiffs had engaged in unauthorized submetering, the authority relied on a definition of submetering used in one of its prior decisions. *Held*:

1. The plaintiffs could not prevail on their claim that because the authority previously had not established what constitutes electric submetering and, thus, its definition was not time-tested, the trial court erred in deferring to the authority's definition of electric submetering; an agency interpretation may warrant deference, even if not time-tested, if it involves extremely complex and technical regulatory and policy considerations, the determination of what constitutes electric submetering is a complex and technical regulatory issue that calls for such specialized expertise and policy considerations, and because our statutes authorize the authority to regulate submetering and the authority's utility commissioners also possess the required expertise needed to regulate submetering, the trial court properly determined that, due to the technical nature of the definition, it was appropriate to defer to the authority's definition of electric submetering.

2. The plaintiffs could not prevail on their claim that the trial court erred in concluding that the heating and air conditioning system fell within the authority's definition of submetering, which was based on their claim that the definition of submetering in the authority's previous decision was applicable only to submetering in the context of public gas utilities and, thus, was not applicable to electric submetering: the authority reasonably found through its reliance on its previous decision that the plaintiffs had engaged in unauthorized submetering, as the definition of submetering relied on by the authority did not focus on the form of energy that the tenants received but, instead, focused on the type of energy billed, and although the plaintiffs claimed that the fundamental component of electric submetering is the furnishing of electric service by a nonutility such that electric service is the physical delivery through wires of electricity to the end user for consumption, combined with measuring the electric consumption with an electric submeter, the state regulations (§§ 16-11-100 and 16-11-238) cited by the plaintiffs in support of their claim do not include a definition of submetering, and the decisions of the authority cited by the plaintiffs do not condition electric submetering by an entity on the furnishing of electric service by such

entity and, in fact, one of those decisions included a definition of submetering that was similar to the definition employed by the authority in its decision in the present case, namely, the measurement and billing of the consumption of a utility's electric service to an individual end-use customer; accordingly, the trial court did not err in affirming the authority's determination that the plaintiffs' computation of the amount of electricity used by each residential unit in using the heating and air conditioning system, and the subsequent billing in proportion to each rental space's use, constituted unauthorized submetering of electricity.

Argued January 15—officially released April 16, 2019

*Procedural History*

Appeal from the decision of the named defendant finding that the plaintiffs had engaged in the unauthorized submetering of electricity and imposing sanctions, brought to the Superior Court in the judicial district of New Britain and tried to the court, *Schuman, J.*; judgment sustaining in part the plaintiffs' appeal, from which the plaintiffs appealed to this court. *Affirmed.*

*Michael J. Donnelly*, with whom was *Paul R. McCary*, for the appellants (plaintiffs).

*Robert L. Marconi*, assistant attorney general, with whom was *George Jepsen*, former attorney general, for the appellee (named defendant).

*Joseph A. Rosenthal*, for the appellee (defendant Office of Consumer Counsel).

*Vincent P. Pace*, for the appellee (defendant The Connecticut Light and Power Company).

*Jeffrey R. Babbin*, for the appellee (defendant The United Illuminating Company).

*Opinion*

HARPER, J. The plaintiffs, PMC Property Group, Inc. (PMC), and Energy Management Systems, Inc. (EMS), appeal from the trial court's judgment affirming in part the decision of the defendant Public Utilities Regulatory Authority (authority),[1] which found that the plaintiffs had engaged in the unauthorized submetering[2] of electricity and, pursuant to that finding, imposed sanctions. On appeal, the plaintiffs claim that the court erred in (1) deferring to the authority's definition of electric submetering where that definition was not time-tested with respect to the heating and air conditioning system at issue in this appeal and (2) affirming the authority's determination that the plaintiffs' use of the heating and air conditioning system constituted submetering of electricity. We affirm the judgment of the court.

The following facts, as found by the authority and adopted by the trial court, and procedural history are relevant to our resolution of this appeal. PMC owns and is the property manager of a multifamily apartment building located at 38 Crown Street, New Haven. The apartment building has sixty-five residential apartments and one commercial unit (rental space). EMS provides billing services for PMC. In 2011, the plaintiffs renovated the building and installed a heating, ventilation, and air conditioning (HVAC) system manufactured by Mitsubishi Electric Cooling & Heating, a division of Mitsubishi Electric & Electronics USA, Inc. (Mitsubishi).[3] The HVAC system is a heat pump system with heat recovery.

Sensors and valves are installed in the indoor piping of each rental space and are used with computer software to measure the HVAC thermal use of each space. Each rental space has a thermostat to control its heating and cooling level, and is separately served through its own meter from The United Illuminating Company (electric company). PMC's electric service is measured through one electric company meter that supplies electricity to seven HVAC outdoor units and the common areas of the building. Two nonutility wattmeters installed after PMC's electric company meter measure the electricity used by the seven outdoor units and provide an input signal to an HVAC billing program.

In March, 2012, PMC, acting through EMS, began billing each tenant for a portion of the seven HVAC compressors' electric use in proportion to the HVAC thermal use of the rental space of each tenant. On August 17, 2012, the Office of Consumer Counsel and the state attorney general filed a joint petition requesting that the authority investigate possible unauthorized submetering at PMC's apartment building. The authority conducted a hearing on November 19, 2012, and rendered a decision on June 5, 2013. In its conclusion, the authority ruled that PMC conducted unautho-

rized submetering at the building. The authority then entered an order providing that PMC shall immediately stop submetering electricity, EMS shall cease submetered billing to the tenants at the building, and PMC shall return all payments collected from each tenant for submetering electricity.

The plaintiffs appealed to the Superior Court, claiming that the authority erred in concluding that they had engaged in unauthorized submetering and challenging the authority's order of relief. In its memorandum of decision issued August 22, 2016, the court applied a deferential standard of review and concluded that the authority did not act unreasonably, arbitrarily, illegally or in abuse of its discretion in concluding that the system at issue constituted unauthorized submetering.[4] This appeal followed.

I

The plaintiffs' first claim on appeal is that the trial court erred in deferring to the authority's definition of electric submetering. Specifically, the plaintiffs claim that because the authority previously had not established what constitutes electric submetering, its definition of such was not time-tested, and, thus, the court should not have afforded the authority deference. In response, the defendants claim that an agency's interpretation may warrant deference, even if not time-tested, if it involves extremely complex and technical regulatory and policy considerations. We agree with the defendants.

We begin our analysis with the applicable standard of review. "[J]udicial review of an administrative agency's action is governed by the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq., and the scope of that review is limited. . . . When reviewing the trial court's decision, we seek to determine whether it comports with the [UAPA]. . . . [R]eview of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. . . . Conclusions of law reached by the administrative agency must stand if . . . they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . . The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of [its] discretion." (Internal quotation marks omitted.) *Recycling, Inc.* v. *Commissioner of Energy & Environmental Protection*, 179 Conn. App. 127, 139–40, 178 A.3d 1043 (2018).

Moreover, "[a]lthough the interpretation of statutes is ultimately a question of law . . . it is the well established practice of [our appellate courts] to accord great deference to the construction given [a] statute by the agency charged with its enforcement. . . . It is also well established that courts should accord deference to an agency's formally articulated interpretation of a statute when that interpretation is both time-tested and reasonable." (Citation omitted; internal quotation marks omitted.) *FairwindCT, Inc.* v. *Connecticut Siting Council*, 313 Conn. 669, 678–79, 99 A.3d 1038 (2014). Our Supreme Court has determined, however, that the "traditional deference accorded to an agency's interpretation of a statutory term is unwarranted when the construction of a statute . . . has not previously been subjected to judicial scrutiny [or to] . . . a governmental agency's time-tested interpretation . . . ." (Internal quotation marks omitted.) *Longley* v. *State Employees Retirement Commission*, 284 Conn. 149, 163, 931 A.2d 890 (2007).

Although our Supreme Court has determined that deference is not ordinarily afforded to an agency's statutory interpretation that has not previously been time-tested or subject to judicial scrutiny, the court also has articulated an exception to that rule. See *Wheelabrator Lisbon, Inc.* v. *Dept. of Public Utility Control*, 283 Conn. 672, 692, 931 A.2d 159 (2007). In *Wheelabrator Lisbon, Inc.*, the Department of Public Utility Control, the authority's predecessor, was required "to determine whether the word 'electricity' as used in [General Statutes] § 16-243a (c) . . . included the renewable energy component of the electricity and whether the purchase of such electricity at the avoided cost rate entitled the utility [company] to credit for the purchase of renewable energy for purposes of [General Statutes] § 16-245a." Id., 691–92. The court stated that "[b]ecause this is a question of statutory interpretation that previously has not been subject to judicial scrutiny, our review ordinarily would be plenary." Id., 692. The court concluded, however, that "*in light of the extremely complex and technical regulatory and policy considerations implicated by this issue*, we are not persuaded that we may substitute our judgment for that of the department. Rather, this is *precisely the type of situation that calls for agency expertise*." (Emphasis added; internal quotation marks omitted.) Id. As such, the court limited its review "to a determination of whether the department [or agency] gave reasoned consideration to all of the relevant factors or whether it abused its discretion." Id.

In the present case, the authority was to determine whether the plaintiffs' method of billing each tenant for a share of the electricity cost to operate the HVAC system at PMC's apartment building constituted electric submetering. The statute authorizing the authority to regulate submetering is General Statutes (Rev. to 2011)

§ 16-19ff, as amended by Public Acts 2011, No. 11-80, § 1,[5] which does not provide a definition for submetering. As such, the authority relied on a definition of submetering used in its Decision and Order, Department of Public Utility Control, "DPUC Investigation into Sub-Metering Natural Gas," Docket No. 06-09-01 (October 17, 2007). That decision defined a "sub-meter" in a natural gas context as "any type of meter or metering device that is placed either in the gas stream, on an appliance, or control system located downstream of the [local distribution company's] meter, which is used to bill individual unit owners or apartment tenants for their usage or estimated usage of a portion of the [local distribution company] customer's total bill." Id., p. 8. In the present case, the authority applied this definition in determining that the plaintiffs had engaged in unauthorized submetering, and the trial court concluded that, due to the technical nature of the definition, it was appropriate to grant deference to the authority's use of it.

As the record reflects, the determination of what constitutes submetering is a complex and technical regulatory issue that calls for specialized expertise and policy considerations. Moreover, not only does § 16-19ff authorize the authority to regulate submetering, but the authority's utility commissioners also possess the required expertise needed to regulate submetering in this context. See General Statutes § 16-2 (e).[6] Accordingly, we conclude that the trial court properly deferred to the authority's definition of submetering.

II

The plaintiffs next claim that the trial court erred in concluding that the HVAC system in this case fell within the authority's definition of submetering. Specifically, the plaintiffs argue that the definition of submetering in the authority's previous decision is applicable only to submetering in the context of public gas utilities and, thus, is not applicable to electric submetering.

Because we concluded in part I of this opinion that the trial court appropriately deferred to the authority's definition of submetering, our review is limited "to a determination of whether [the authority] gave reasoned consideration to all of the relevant factors or whether it abused its discretion" in concluding that the plaintiffs had engaged in unauthorized submetering. *Wheelabrator Lisbon, Inc.* v. *Dept. of Public Utility Control*, supra, 283 Conn. 692.

In analyzing whether submetering had occurred at the apartment building, the authority first focused on the situation at the building, including the building layout, the HVAC system and billing related thereto, and the electric service provided to tenants. The authority then applied § 16-19ff and correctly concluded that PMC was not authorized to submeter electricity to the build-

ing without the authority's express approval. Finally, the authority analyzed the activity alleged as submetering and applied the definition of submetering as laid out in its previous decision regarding natural gas. Specifically, the authority found that "PMC indicated that it used the measurements of the refrigerant or heating medium to allocate one of the costs of supplying HVAC to the [building], *by measuring the electricity used by the rooftop compressor to each tenant and billing the proportionate cost to each apartment*." (Emphasis added.) Moreover, the authority found that "in addition to the two third-party electricity meters and a computer program that determines the electricity used by the seven outdoor units, there are other mechanical devices installed in each tenant's [rental] space *that make measurement of thermal use and* [*allocate*] *the electricity costs for the seven outdoor units to each apartment in proportion to its thermal use*." (Emphasis added.) The authority concluded that PMC's use of its "HVAC system and the equipment's sensing devices, its use of two third-party wattmeters, and the allocation and billing of the outdoors units' [kilowatt-hour] use, constitute[d] submetering electricity use," and that this, in addition to EMS's billing of tenants for that use, had not been approved by the agency.

We agree with the trial court and conclude that the authority reasonably found through its reliance on its previous decision that the plaintiffs had engaged in unauthorized submetering. As did the trial court, we conclude that the definition of submetering relied on by the authority "does not focus on the form of energy that the tenants receive," but, "[r]ather, it focuses on the type of energy billed."

The plaintiffs additionally argue that electric submetering is defined as "the secondary furnishing of electric service by a customer to a third party." In particular, the plaintiffs cite to §§ 16-11-100[7] and 16-11-238[8] of the Regulations of Connecticut State Agencies, in addition to the authority's decisions referencing electric submetering,[9] in arguing that the fundamental component of electric submetering is the furnishing of electric service by a nonutility such that electric service is the physical delivery through wires of electricity to the end user for consumption, combined with measuring the electric consumption with an electric submeter. We are unpersuaded.

As previously discussed, the trial court appropriately deferred to the authority's definition of submetering and its decision applying § 16-19ff. See part I of this opinion. In addition, not only do §§ 16-11-100 and 16-11-238 of the Regulations of Connecticut State Agencies not provide for a definition of submetering, but § 16-11-238 is also only relevant to meter testing and record keeping by submetering customers. The authority's decisions cited by the plaintiffs also do not condition

electric submetering by an entity on the furnishing of electric service by such entity. Rather, Decision and Order, Department of Public Utility Control, "Request of Brewers Pilots Point Marine et al., for a Declaratory Ruling Regarding Electric Service, Submetering and Rates Applicable to Boat Docks at Marinas," Docket No. 01-08-11 (November 27, 2002) p. 3, merely states that, subject to the authority's approval, marinas may submeter "provided they supply electric service at the same quality as that provided by the local utility." Moreover, the definition of submetering, as laid out in Interim Decision and Order, Public Utilities Regulatory Authority, "PURA Generic Investigation of Electric Submetering," Docket No. 13-01-26 (August 6, 2014) p. 5, does not include language conditioning submetering on the provision of electric service but, rather, appears similar to the definition employed by the authority in its decision in the present case: "measurement and billing of the consumption of a utility's electric service to an individual end-use customer . . . ." The plaintiffs acknowledge that "the system's computer software is used to determine the amount of refrigerant used by each unit." The plaintiffs also concede in their brief that "[this] software . . . uses the refrigerant meter results to allocate the cost of the electricity used by the outdoor compressor units across all the connected indoor units. The system, thus, meters the electricity used by the HVAC compressors and bills this usage to the sixty-five residential apartments . . . in proportion to each tenant's HVAC thermal use." Finally, it is undisputed that the plaintiffs did not obtain the authority's approval prior to engaging in submetering.

On the basis of the foregoing, we conclude that the trial court did not err in affirming the authority's determination that the plaintiffs' computation of the amount of electricity used by each residential unit in using the HVAC system, and the subsequent billing in proportion to each rental space's use, constituted unauthorized submetering of electricity.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The other defendants in this appeal are the state Office of Consumer Counsel, The United Illuminating Company, and The Connecticut Light and Power Company. In addition, the Office of the Attorney General, Greater Hartford Legal Aid, Inc., and Mitsubishi Electric Cooling & Heating, a division of Mitsubishi Electric & Electronics USA, Inc., were also named as defendants but are not parties to this appeal. To avoid confusion, we refer to each of the plaintiffs and the defendants by name where necessary.

[2] The definition of electrical utility submetering is at the heart of this appeal. Indeed, our research reveals that our General Statutes, regulations, and case law have not defined submetering in this context. New York case law has defined submetering in the electric utility context as when "[t]he owner or operator of a building buys current from a public utility at the wholesale rate and resells it through separate meters to individual tenants, usually at a retail rate." *Campo Corp.* v. *Feinberg*, 279 App. Div. 302, 303, 110 N.Y.S.2d 250, aff'd, 303 N.Y. 995, 106 N.E.2d 70 (1952). This definition is consistent with how the authority has defined the term in connection with the submetering of natural gas, as discussed in part I of this opinion.

[3] The plaintiffs note in their brief before this court that, although the trial

court used the acronym HVAC in describing the system, the Mitsubishi system does not have a ventilation component.

[4] Additionally, although the court concluded that the authority lacked the statutory power to order rebates in this case, it ordered the parties to arrange for the return, with interest, of tenant submetering funds to the tenants, which had been escrowed during the pendency of the appeal to the trial court. The plaintiffs have not challenged this order on appeal.

[5] General Statutes (Rev. to 2011) § 16-19ff, as amended by Public Acts 2011, No. 11-80, § 1, provides: "(a) Notwithstanding any provisions of the general statutes to the contrary, each electric company or electric distribution company shall allow the installation of submeters at a recreational campground, individual slips at marinas for metering the electric use by individual boat owners or in any other location as approved by the authority and shall provide electricity to such campground at a rate no greater than the residential rate for the service territory in which the campground or marina is located, provided nothing in this section shall permit the installation of submeters for nonresidential use including, but not limited to, general outdoor lighting marina operations, repair facilities, restaurants or other retail recreational facilities. Service to nonresidential facilities shall be separately metered and billed at the appropriate rate.

"(b) The Public Utilities Regulatory Authority shall adopt regulations, in accordance with the provisions of chapter 54, to carry out the purposes of this section. Such regulations shall: (1) Require a submetered customer to pay only his portion of the energy consumed, which cost shall not exceed the amount paid by the owner of the main meter for such energy; (2) establish standards for the safe and proper installation of submeters; (3) require that the ultimate services delivered to a submetered customer are consistent with any service requirements imposed upon the company; (4) establish standards for the locations of submeters and may adopt any other provisions the authority deems necessary to carry out the purposes of this section and section 16-19ee."

[6] General Statutes § 16-2 (e) provides in relevant part that "any newly appointed utility commissioner of the authority shall have education or training and three or more years of experience in one or more of the following fields: Economics, engineering, law, accounting, finance, utility regulation, public or government administration, consumer advocacy, business management, and environmental management. . . ."

[7] Section 16-11-100 of the Regulations of Connecticut State Agencies provides in relevant part: "(f) Submetering Customer means any recreational campground, or other facility as approved by the Department [of Public Utility Control], whose electric service is furnished by an electric company and who is authorized to submeter the service to other parties within such facility;

"(g) Submetered Party means any person, partnership, firm, company, corporation or organization whose electric service is furnished by a submetering customer of an electric company . . . ." (Internal quotation marks omitted.)

[8] Sections 16-11-238 of the Regulations of Connecticut State Agencies provides: "(a) All watt-hour meters installed and owned by a submetering customer shall be tested periodically in conformity with the most recent ANSI Code for Electricity Metering. Meter test data shall be furnished to the Department [of Public Utility Control] upon request.

"(b) Meter records shall be kept by the submetering customer and shall include the identification of each meter, the date and place of its latest installation or removal and the date and results of the most current meter test. These records shall be maintained for the previous two years.

"(c) Every submetering customer shall provide to the Department, upon request data or records as may be deemed necessary by the Department related to the submetering and furnishing of electric service to submetered parties."

[9] The plaintiffs cite to Interim Decision and Order, Public Utilities Regulatory Authority, "PURA Generic Investigation of Electric Submetering," Docket No. 13-01-26 (August 6, 2014) p. 5, and Decision and Order, Department of Public Utility Control, "Request of Brewers Pilots Point Marine et al., for a Declaratory Ruling Regarding Electric Service, Submetering and Rates Applicable to Boat Docks at Marinas," Docket No. 01-08-11 (November 27, 2002) p. 3.