[681 NYS2d 396]

PUBLIC UTILITY LAW PROJECT OF NEW YORK, INC., et al., Appellants, v NEW YORK STATE PUBLIC SERVICE COMMISSION et al., Respondents.

Third Department, December 10, 1998

**APPEARANCES OF COUNSEL**

*Gerald A. Norlander,* Albany, for Public Utility Law Project of New York, Inc., and others, appellants.

*Milton Amgott,* New York City, for Paul D. Tonko, appellant.

*Lawrence G. Malone,* Albany, for New York State Public Service Commission, respondent.

*Craig G. Goodman,* Albany (*Usher Fogel* of *Roland, Fogel, Koblenz & Petroccione, L. L. P.,* of counsel), Washington, D.C., for National Energy Marketers Association and others, *amici curiae.*

*Helene Weinstein,* New York State Assemblywoman, Albany, *amicus curiae.*

**OPINION OF THE COURT**

Mercure, J.

The only issue that need be considered on this appeal is whether Supreme Court was correct in its determination that plaintiffs lacked standing to bring this action for a declaration of the invalidity of a March 28, 1996 order of defendant Public Service Commission (hereinafter the PSC) which, *inter alia,* exempted nonutility natural gas marketers and aggregators from the requirements of the Home Energy Fair Practices Act ([hereinafter HEFPA] Public Service Law art 2). We conclude that Supreme Court was correct in that determination and that the action was properly dismissed on the basis thereof. We accordingly affirm Supreme Court's order.

Traditionally, natural gas has been provided to residential customers by local utility companies, which maintain a monopoly and are permitted to provide service at a "bundled" rate set by the PSC, encompassing both the cost of the natural gas and transportation. In order to protect customers of natu-

ral gas and to ensure that gas service is continually provided "to residential consumers without unreasonable qualifications or lengthy delays" (Public Service Law § 30; *see*, 16 NYCRR parts 11, 12), in 1981 the Legislature enacted HEFPA, which, among other things, requires gas utility companies to provide service upon request, to provide notice for denial of service (Public Service Law § 31 [1], [2]) or termination of service (Public Service Law §§ 32, 33, 34), to reconnect service upon satisfaction of identified conditions (Public Service Law § 35), and to comply with detailed billing limitations and requirements (Public Service Law §§ 36, 42).

With the enactment of Public Service Law § 66-d (2), which empowered the PSC to require utilities to transport nonutility gas to consumers, New York embarked upon an era of increased competition in the natural gas industry. Ultimately, natural gas prices were "unbundled", with the separation of the sales service component (represented by gas producers and marketers) from the transportation service component (represented by local distribution companies [LDCs]), thereby opening the way for gas producers and marketers to negotiate directly with end users. Further, through "aggregation" smaller customers were permitted to join together, enabling them to combine their purchasing power and shop collectively for lower-priced gas.

After reevaluating its policies in light of the new open competition in the natural gas industry in New York and consideration of a proposal to, among other things, exempt gas marketers from HEFPA, in March 1996 the PSC issued the subject order, providing that "[t]he portion of the service resulting from the new relationships among the marketers, LDCs and the customers will be based on contractual agreements, tariff provisions and good customer principles". Of primary relevance in this action, the order directed that each utility require gas marketers "seeking to obtain transportation services from LDCs to sell gas to residential customers" to provide the Consumer Services Division with a copy of the contract between the marketer and the consumer with specific language of a waiver of HEFPA protections, a system to handle consumer complaints with a hotline number, bills in clear and plain language, and proper procedures for termination of service, prior to which the LDC would be required to provide service in compliance with HEFPA to "protect against potentially harmful situations".

Plaintiffs then commenced this declaratory judgment action against the PSC, the Department of Public Service (hereinafter

the Department), the Chairperson of the PSC and the State Comptroller, seeking to have the March 28, 1996 order declared unlawful as violative of Public Service Law § 66-d (2) to the extent that it exempted gas marketers and aggregators from the HEFPA consumer protection requirements. The PSC, its Chairperson and the Department jointly moved to convert the action for declaratory judgment into a CPLR article 78 proceeding and for summary judgment. In a well-reasoned and comprehensive opinion, Supreme Court found (as relevant here) that none of the plaintiffs had standing to maintain the action pursuant to either State Finance Law § 123-b or common-law standing principles. We agree.

Plaintiffs are comprised of three individuals, all of whom are citizens and taxpayers of this State, and a not-for-profit corporation that participated in the proceedings leading up to the PSC's enactment of the challenged order and filed comments opposing a waiver of HEFPA requirements for gas marketers. Their claim of standing under State Finance Law § 123-b* is based upon allegations of the complaint that the challenged order has resulted in illegal expenditures, including "the money spent to develop and distribute a new brochure that advises customers of a two-tier system of residential customer protection", "money spent to develop and distribute a new question and answer guide for customers", "expenditures * * * to promote the sale of natural gas by providers * * * includ[ing] the preparation and dissemination of information provided to the public on a toll-free telephone line * * * on a PSC World Wide Web site * * * and the ongoing operating and maintenance costs associated therewith".

In our view, the foregoing allegations fall far short of satisfying the legal requirement that a citizen-taxpayer claiming standing under State Finance Law § 123-b demonstrate that the "challenged expenditures can be clearly traced to identifiable State funds" (*Matter of Schulz v State of New York*, 217 AD2d 393, 395; *see, Matter of Schulz v Cobleskill-Richmondville Cent. School Dist. Bd. of Educ.*, 197 AD2d 247, 251; *see also, Matter of Gerdts v State of New York*, 210 AD2d 645, 647-648,

---

* State Finance Law § 123-b (1) provides in pertinent part that: "any person, who is a citizen taxpayer, whether or not such person is or may be affected or specially aggrieved by the activity herein referred to, may maintain an action for equitable or declaratory relief, or both, against an officer or employee of the state who in the course of his or her duties has caused, is now causing, or is about to cause a wrongful expenditure, misappropriation, misapplication, or any other illegal or unconstitutional disbursement of state funds".

*appeal dismissed* 85 NY2d 856, *lv denied* 85 NY2d 810; *cf.*, *Matter of Schulz v Horseheads Cent. School Dist. Bd. of Educ.*, 222 AD2d 819, 819-820, *appeal dismissed* 87 NY2d 967). To the contrary, as in *Matter of Schulz v Warren County Bd. of Supervisors* (206 AD2d 672, *lv denied* 85 NY2d 805) and *Matter of Gerdts v State of New York* (*supra*), plaintiffs' challenge is directed at allegedly unlawful agency action—in this case, the claim is that the challenged order violates Public Service Law § 66-d (2) by exempting "gas corporations" from HEFPA— which is the proper subject of a CPLR article 78 proceeding, but one having essentially nothing to do with the unauthorized expenditure of funds. Further, the expenditures alleged in the complaint are by no means unlawful; rather, as correctly argued by the PSC, the "review of utility tariffs, scrutiny of utilities' treatment of customers and publication of information about electric restructuring * * * are classic examples of duties assigned to the PSC under the Public Service Law" (*see*, Public Service Law § 66 [12]).

We also agree with Supreme Court's conclusion that plaintiffs lack common-law standing. We first note that none of the individual plaintiffs are customers of gas marketers and, therefore, have suffered no direct injury different from the public at large that can be attributed to the PSC's actions (*see*, *Society of Plastics Indus. v County of Suffolk*, 77 NY2d 761, 774). Further, the not-for-profit corporation cannot satisfy the applicable test for organizational standing because it has failed to show that any of its members would have standing to sue (*see*, *id.*, at 775).

In view of our conclusion that plaintiffs lacked standing to bring this action, the parties' remaining contentions are academic.

CARDONA, P. J., WHITE, SPAIN and GRAFFEO, JJ., concur.

Ordered that the order is affirmed, without costs.