■ In the Matter of RETAIL ENERGY SUPPLY ASSOCIATION et al., Appellants-Respondents, v PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK et al., Respondents-Appellants. (And Two Other Related Proceedings.) [59 NYS3d 590]—

Lynch, J. Cross appeal from a judgment of the Supreme

Court (Zwack, J.), entered July 26, 2016 in Albany County, which, among other things, partially granted petitioners' application, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, to review a determination of respondent Public Service Commission resetting retail energy markets and establishing further process.

On February 23, 2016, respondent Public Service Commission (hereinafter the PSC) issued "Order Resetting Retail Energy Markets and Establishing Further Process" (hereinafter the Reset Order), which, among other things, required that new and renewal contracts between energy service companies (hereinafter ESCOs) and mass market customers[1] "guarantee savings in comparison to what the customer would have paid as a full service utility customer or provide at least 30% renewable electricity." For any new or renewal contracts, ESCOs would be required to provide the PSC with notice—within 10 days of the effective date of the Reset Order—certifying their compliance with the new provisions. Additionally, "ESCOs must receive affirmative consent from a mass market customer prior to renewing that customer from a fixed rate or guaranteed savings contract into a contract that provides renewable energy but does not guarantee savings." The Reset Order explained that these new requirements were in response to "a large number of complaints from ESCO customers about unexpectedly high bills," a determination that mass market customers had not received comparable benefits to those received by large commercial and industrial customers, and the necessity for "an immediate transition" in light of prior remedial attempts. In further response to the determination that "retail energy markets [were] not providing sufficient competition or innovation to properly serve mass market customers," the Reset Order also required ESCOs to comply with new disclosure and marketing rules and procedures. The Reset Order cited Public Service Law §§ 5 and 53 for the proposition that the PSC "has broad legal authority to oversee ESCOs," and Public Service Law § 66 (5) for the proposition that "the [PSC] has authority over the tariffed rules and regulations of electric and gas distribution utilities."

By way of background, in the 1980s, the Legislature authorized the PSC to open up the retail energy market by requiring utilities to transport gas commodities owned by other companies (*see* Public Service Law § 66-d; *Rochester Gas & Elec. Corp.*

---

**1.** The PSC broadly defined mass market customers to include residential customers and those "small non-residential customer[s]" that are "non-demand metered."

*v Public Serv. Commn. of State of N.Y.*, 71 NY2d 313, 320-322 [1988]). The measure, in part, was designed to increase competition within the natural gas industry. In 1996, the PSC restructured the electric service provider industry in light "of the need to lower rates for all customers in order to spur economic development in the [s]tate and to avoid jeopardizing safe and reliable electric service" (1996 NY PSC Op No. 96-12 at 1; *see Matter of Energy Assn. of N.Y. State v Public Serv. Commn. of State of N.Y.*, 169 Misc 2d 924 [1996], *affd on other grounds* 273 AD2d 708 [2000], *lv denied* 95 NY2d 765 [2000]). These measures allowed ESCOs access to the energy market by selling energy as a commodity using the utilities infrastructure. As a result, there are two components to supplying energy: the delivery of energy through the infrastructure owned and maintained by utilities; and the sale and supply of the commodity, i.e., gas or electric, by either a utility company or an ESCO.

In 2002, the PSC adopted the Uniform Business Practices (hereinafter UBP) to govern ESCO billing practices (*see Matter of Customer Billing Arrangements*, 2002 WL 1776907, 2002 NY PUC LEXIS 106 [ Nos. 99-M-0631, 98-M-1343, Mar. 14, 2002]). In a February 2014 order, the PSC raised concerns about prices that ESCOs charged to residential customers and the lack of energy-related value-added services being offered. Thereafter, in a February 2015 order, the PSC, among other things, set conditions upon ESCOs with respect to low income assistance program utility customers—specifically, ESCOs "must guarantee such customers savings in comparison with what the customer would have paid the utility, or must include energy-related value-added services that may reduce a customer's overall energy bill" (*Proceeding on Motion of the Commission to Assess Certain Aspects of the Residential and Small Non-Residential Retail Energy Markets in New York State*, 2015 WL 574186, *2, 2015 NY PUC LEXIS 38, *4 [No. 12-M-0476, Feb. 6, 2015]). A "Report of the Collaborative Regarding Protections for Low Income Customers of Energy Services Companies" followed in November 2015, which addressed implementation of the February 2015 order and, in part, discussed proposals by consumer advocates to extend the protections for low-income customers to all residential customers. As is relevant here, the PSC expanded this approach via the Reset Order by setting conditions on ESCOs with regard to rate savings and energy services for contracts to a broader customer base—specifically, mass market customers.

On March 3, 2016, petitioners, which include a national trade

association for retail energy suppliers and several ESCOs, commenced this combined CPLR article 78 proceeding and action for declaratory judgment seeking a declaration that the Reset Order was void and a stay preventing the PSC from enforcing the Reset Order because, as is relevant here, "the Legislature has not granted the PSC the authority to regulate ESCO prices" and, therefore, "the price regulation contained in the [Reset Order] was in excess of the [PSC]'s jurisdiction." Petitioners also alleged that the Reset Order's issuance was arbitrary and capricious and violated petitioners' federal and state due process rights. In March 2016, Supreme Court (O'Connor, J.) issued a temporary restraining order staying the Reset Order from taking effect. Following joinder of issue, Supreme Court (Zwack, J.) determined that the PSC had authority to impose the Reset Order limitations on ESCOs, but vacated the first three provisions of the Reset Order outlined above because the PSC failed to provide petitioners with notice and an opportunity to be heard.[2] This cross appeal ensued.

The paramount issue presented is whether the PSC has the authority to impose the rate-making limitations on ESCOs set forth in the Reset Order. "The [PSC] possesses only those powers expressly delegated to it by the Legislature, or incidental to its expressed powers, together with those required by necessary implication to enable the [PSC] to fulfill its statutory mandate. Among the powers delegated to the [PSC] is the authority to establish the rates charged by a utility for gas and electric service. Indeed, it has been recognized that when it comes to setting rates for such service[,] the [PSC] has been granted the very broadest of powers, the Legislature mandating only that the rates fixed be just and reasonable" (*Matter of Niagara Mohawk Power Corp. v Public Serv. Commn. of State of N.Y.*, 69 NY2d 365, 368-369 [1987] [internal quotation marks and citations omitted]).

The PSC argues that ESCOs are "gas corporations" and "electric corporations" subject to its rate-making jurisdiction under Public Service Law article 4 (*see* Public Service Law § 66 [5]). The term "gas corporation" speaks to an entity "owning, operating or managing any *gas plant*," with certain exceptions not pertinent here (Public Service Law § 2 [11] [emphasis added]). The term "gas plant" "*includes* all real estate, fixtures and personal property operated, owned, used or to be used for

---

2. Supreme Court's decision also addressed another combined action/proceeding that is before this Court (*Matter of National Energy Marketers Assn. v New York State Pub. Serv. Commn.*, 152 AD3d 1122 [2017] [decided herewith]).

or in connection with or to facilitate the . . . sale or furnishing of gas . . . for light, heat or power," with an exception not applicable here (Public Service Law § 2 [10] [emphasis added]). The PSC maintains that ESCOs constitute "gas corporations" essentially because they utilize personal property, i.e., telephones and computers to sell gas to their customers. The flaw in this thesis is that it disregards the operative term, "gas plant." As a noun, the word "plant"—given its plain meaning in our context (*see Matter of Albany Law School v New York State Off. of Mental Retardation & Dev. Disabilities*, 19 NY3d 106, 120 [2012])—can be defined as "the land, buildings, machinery, apparatus, and fixtures employed in carrying on a trade or an industrial business" (Merriam-Webster Online Dictionary, plant [http://www.merriam-webster.com/dictionary/plant]). Comparatively, a "power plant" is defined as "the total facilities available for production or service" (Merriam-Webster Online Dictionary, plant [http://www.merriam-webster.com/dictionary/plant]). The point made is that the term "plant" speaks to a facility, and its various components as defined in Public Service Law § 2 (10), which include but are not limited to "personal property." As such, we reject the PSC's contention that ESCOs constitute "gas corporations" subject to rate setting under Public Service Law article 4 (*see* Public Service Law § 66 [5]). By the same analysis, ESCOs are not "electric corporations" under article 4 (*see* Public Service Law § 2 [12], [13]).

This conclusion is consistent with the Energy Consumer Protection Act of 2002 (L 2002, ch 686, § 1). This legislation added a new section 53 to the Public Service Law that, for the limited purposes of Public Service Law article 2, expanded reference to a gas or electric corporation and utility company or corporation to also include "any entity that, in any manner, sells or facilitates the sale or furnishing of gas or electricity to residential customers" (Public Service Law § 53). The intent of the amendment was to expressly counteract a 1997 order by the PSC that had exempted ESCOs from article 2, commonly known as the Home Energy Fair Practices Act (*see* Budget Report on Bills, Bill Jacket, L 2002, ch 686 at 4; *see generally Matter of Public Util. Law Project of N.Y. v New York State Pub. Serv. Commn.*, 263 AD2d 879, 880 [1999], *lv denied* 94 NY2d 755 [1999]; *Public Util. Law Project of N.Y. v New York State Pub. Serv. Commn.*, 252 AD2d 55, 56-57 [1998]). Correspondingly, this provision would have been unnecessary if an ESCO constituted either a gas or electric corporation (*see* McKinney's Cons Laws of NY, Book 1, Statutes §§ 193, 240).

We do find, however, that the PSC's broad statutory jurisdic-

tion and authority over the sale of gas and electricity authorized it to impose the limitations set forth in the Reset Order. Pursuant to Public Service Law § 5, "[t]he jurisdiction, supervision, powers and duties of the [PSC] shall extend . . . *[t]o the* manufacture, conveying, transportation, *sale* or distribution *of gas . . . and electricity* . . . to gas plants and to electric plants and to the persons or corporations owning, leasing or operating the same" (Public Service Law § 5 [1] [b] [emphasis added]). The emphasized language speaks to general authority over the sale of gas and electricity, followed by the specific extension of the PSC's jurisdiction over gas and electric plants. Importantly, there is no dispute that the PSC is authorized to set "just and reasonable" tariff rates for gas and electric corporations pursuant to Public Service Law articles 1 and 4 (Public Service Law § 66 [5]; *see* Public Service Law § 5 [1] [b]). In fact, it is the PSC's broad jurisdiction that enabled it to allow ESCOs access to utility systems in the first place. The PSC essentially maintains that this same authority allows it to impose limitations on ESCO rates as a condition to continued access. We agree.

Notably, in 2010, the Legislature enacted General Business Law § 349-d establishing a bill of rights for ESCO customers outlining consumer protection for marketing and billing practices. The protections are enforceable by the Attorney General of his or her own accord or upon referral from the PSC (*see* General Business Law § 349-d [9]). As the PSC acknowledges, General Business Law § 349-d does not constitute a specific grant of authority to limit ESCO rates. The statute does, however, specify that "[n]othing in this section shall be deemed to limit any authority of the [PSC] . . . which existed before the effective date of this section, to limit, suspend or revoke the eligibility of an [ESCO] to sell or offer for sale any energy services for violation of any provision of law, rule, regulation or policy enforceable by [the PSC]" (General Business Law § 349-d [11]). The same reservation pertains to the PSC's existing authority "to adopt additional guidelines, practices, policies, rules or regulations relating to the marketing practices of [ESCOs]" (General Business Law § 349-d [12]). These express legislative reservations effectively acknowledge the PSC's existing authority to impose its policies on ESCOs—which, in turn, buttresses the PSC's position that it is authorized to condition ESCO access to utility systems by capping ESCO rates at the just and reasonable amount statutorily imposed on utilities (*see* Public Service Law § 65 [1]).

As explained in the Reset Order, the PSC discerned that

most ESCOs only offered commodity resale to their customers in direct competition with utilities. In doing so, ESCOs have had difficulty competing because the PSC "requires utilities to flow through energy commodity to end-users at cost, without a markup." In consequence, numerous customer complaints have been made that ESCOs are charging more than the utilities—a result contrary to the very purposes of opening up the energy market in the first place, i.e., to promote lower energy costs to consumers. The rule change was implemented because the PSC determined that "it is not in the public interest for ESCOs to provide commodity supply only products for mass market customers." This decision falls within the PSC's broad authority to assure that "just and reasonable rates" are charged for gas and electric sold to the consumer, consistent with its authority over utilities (*Matter of Energy Assn. of N.Y. State v Public Serv. Commn. of State of N.Y.*, 169 Misc 2d at 936). Accordingly, we agree with Supreme Court that the PSC had jurisdiction to impose the rate limitations set forth in the Reset Order.

Turning to respondents' cross appeal, the PSC maintains that Supreme Court erred in finding that petitioners had a property interest entitling them to procedural due process and, in any event, that petitioners were provided due notice and an opportunity to be heard prior to the adoption of the Reset Order. We do agree that Supreme Court erred to the extent that it found that ESCOs have a property interest in continued access to utility systems (*see Matter of Niagara Mohawk Power Corp. v New York State Dept. of Transp.*, 224 AD2d 767, 767-768 [1996], *appeal dismissed* 87 NY2d 1054 [1996], *lv denied* 88 NY2d 809 [1996]; *Matter of Campo Corp. v Feinberg*, 279 App Div 302, 306-307 [1952]). That said, the determinative point is that respondents properly concede in the notice of cross appeal and their brief that the PSC failed to comply with the notice requirements of the State Administrative Procedure Act in adopting the Reset Order[3] (*see* State Administrative Procedure Act art 2, § 202 *et seq.*; *see e.g. Matter of Keyspan Energy Servs. v Public Serv. Commn. of State of N.Y.*, 295 AD2d 859, 861 [2002]). We are mindful that the PSC's February 2014 order identified issues within the ESCO retail energy market impacting mass market customers, but the main discussion keyed into changes impacting low-income customers. Similarly,

---

3. In their brief, respondents have attached a Notice of Evidentiary and Collaborative Tracks and Deadline for Initial Testimony and Exhibits, issued December 2, 2016, that pertains to the eligibility criteria for ESCOs included within the Reset Order.

the November 2015 Collaborative Report included opposition from ESCOs to the prospect of extending consumer protections to all residential customers, but primarily addressed the implementation of protections for low-income customers. Consequently, we conclude that the judgment should be affirmed.

Garry, J.P., Egan Jr., Mulvey and Aarons, JJ., concur.

Ordered that the judgment is affirmed, without costs.