******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## MARILEE CORR CLARK *v.* EMPLOYEES' REVIEW BOARD ET AL.
### (AC 47020)

Alvord, Suarez and Westbrook, Js.

*Syllabus*

The plaintiff, a former managerial employee of the Department of Revenue Services who was not included in any collective bargaining agreement, appealed from the trial court's judgment dismissing her appeal from the decision of the defendant board, which found that the department's decision to terminate the plaintiff's employment was not arbitrary or taken without reasonable cause pursuant to statute (§ 5-202 (c)). The plaintiff claimed, inter alia, that the court failed to use the proper just cause standard applicable to permanent state employees. *Held*:

The trial court properly upheld the department's decision to terminate the plaintiff's employment utilizing a just cause standard pursuant to the applicable statute (§ 5-240) and regulation (§ 5-240-1a (c)), as the plaintiff's assertions that she was entitled to progressive discipline prior to the termination of her employment or to the application of the common-law seven step test to determine just cause conflicted with the statutory and regulatory definitions that the legislature has adopted for nonunion employees.

The trial court did not make certain improper legal and factual findings that were not made by the defendant, as the court correctly determined that there was substantial evidence in the record to support the termination of the plaintiff's employment on the basis of her engagement in activities that were detrimental to the best interest of the department and that the defendant's finding of just cause was supported by substantial evidence.

The trial court properly dismissed the plaintiff's administrative appeal, as there was substantial evidence in the record to support the defendant's factual findings and the termination of the plaintiff's employment from state service for just cause.

Argued February 11—officially released August 26, 2025

*Procedural History*

Appeal from the decision of the named defendant finding that the termination of the plaintiff's employment by the Department of Revenue Services was not arbitrary or taken without reasonable cause, brought to the Superior Court in the judicial district of New Britain and tried to the court, *Budzik, J.*; judgment

dismissing the appeal, from which the plaintiff appealed to this court. *Affirmed.*

*Marilee Corr Clark*, self-represented, the appellant (plaintiff).

*Krista D. O'Brien*, assistant attorney general, with whom were *Ksenya Hentisz*, assistant attorney general, and, on the brief, *William Tong*, attorney general, for the appellees (defendants).

*Opinion*

SUAREZ, J. The self-represented plaintiff, Marilee Corr Clark, appeals from the judgment of the trial court dismissing her administrative appeal from the decision of the defendant Employees' Review Board (board),[1] finding that the decision of the Department of Revenue Services (department)[2] to terminate the plaintiff's employment was not arbitrary or taken without reasonable cause pursuant to General Statutes § 5-202 (c).[3]

---

[1] The board is a creature of statute. General Statutes § 5-201 provides in relevant part: "(a) There shall be an Employees' Review Board consisting of seven members . . . .

"(b) The board shall hear and act upon appeals filed with it in accordance with section 5-202. The board, or any three of its members designated by the board, may serve as a hearing panel and render a decision. . . ."

The scope of the board's authority is governed by General Statutes § 5-202. See *State* v. *State Employees' Review Board*, 231 Conn. 391, 406 n.17, 650 A.2d 158 (1994); see also footnote 3 of this opinion. Section 5-202, in turn, is part of the State Personnel Act, codified in General Statutes §§ 5-193 through 5-269, the purpose of which is to "establish a system of public employment based on merit principles, eliminate political patronage, personal favoritism and discrimination against disfavored political and religious factions, and thereby prevent governmental corruption." *Dept. of Administrative Services* v. *Employees' Review Board*, 226 Conn. 670, 681, 628 A.2d 957 (1993).

[2] Mark Boughton, the Commissioner of Revenue Services, was also named as a defendant in this action. We refer to the board and to Boughton collectively as the defendants and individually when appropriate.

[3] General Statutes § 5-202 provides in relevant part: "(a) Any employee who is not included in any collective bargaining unit of state employees and who has achieved a permanent appointment as defined in section 5-196 may appeal to the Employees' Review Board if such employee receives an unsatisfactory performance evaluation or is demoted, suspended or dis-

On appeal, the plaintiff claims that (1) the court failed to utilize the proper "just cause" standard applicable to permanent state employees, (2) the court made certain improper factual findings that were not made by the board, and (3) the board's findings of fact were unsupported by substantial evidence in the administrative record.[4] We affirm the judgment of the court dismissing the plaintiff's administrative appeal.

The record reflects the following relevant facts and procedural history. The plaintiff is an attorney who served as the tax legal director of the department from 2015 until the termination of her employment in October, 2020. As tax legal director, the plaintiff was a manager in the classified service and was, therefore, a permanent state employee not included in any collective bargaining agreement.[5] See General Statutes §§ 5-196

missed . . . . Such employee must have complied with preliminary review procedures . . . .

"(c) Upon receiving an appeal, the board shall assign a time and place for a hearing and shall give notice of such time and place to the parties concerned. The hearing panel shall not be bound by technical rules of evidence prevailing in the courts. If, after hearing, a majority of the hearing panel determines that the action appealed from was arbitrary or taken without reasonable cause, the appeal shall be sustained; otherwise, the appeal shall be denied. . . ."

[4] In the statement of issues in her principal appellate brief, the plaintiff identifies seven issues for this court's review. We have reframed the plaintiff's claims, in some instances condensing closely related claims, to more accurately reflect the arguments in her brief. See, e.g., *Thomas* v. *Cleary*, 229 Conn. App. 15, 17 n.2, 326 A.3d 1109 (2024). Additionally, to the extent that any of these issues are mentioned in the statement of issues but are not subsequently discussed or developed in the plaintiff's brief, they have been abandoned. See, e.g., *Ramos* v. *State*, 230 Conn. App. 524, 530, 330 A.3d 278 (2025) ("[when] a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned" (internal quotation marks omitted)).

[5] See General Statutes § 5-196 (6) (classified service means "every office or position in the state service, whether full-time or part-time, for which compensation is paid, except those offices and positions specified in section 5-198 or otherwise expressly provided by statute"); see also General Statutes § 5-196 (20) (permanent position means "any position in the classified service

and 5-198. At all relevant times, the plaintiff reported to then acting commissioner of the department, John Biello, and to the first assistant commissioner, Louis Bucari. The plaintiff's duties included supervising the research unit and legal division, which included drafting and amending tax legislation and regulations.

It is undisputed that the plaintiff and Bucari had a history of discord, and, when Biello became acting commissioner in January, 2020, he met with the plaintiff to discuss how she and Bucari could work better together. The plaintiff responded that she could not work with Bucari. In or around January, 2020, the plaintiff applied for employment with the Office of the Attorney General, specifically indicating interest in the finance group, which represents the department in tax matters.

On February 3, 2020, the plaintiff called William Chapman, the director of government and community affairs for the Connecticut Bar Association (CBA), to inquire as to whether the CBA was planning to bring forward a particular proposed bill, Senate Bill No. 941, which related to the repeal of the succession tax, during the 2020 legislative session.[6] After this phone call, the plaintiff sent an email to Chapman, using her personal email address, containing proposed statutory language relating to Senate Bill No. 941. The plaintiff's revision proposed adding the following relevant language in section 5 of the bill: "Any first assistant commissioner so appointed shall serve at the pleasure of the attorney general and will be exempt from classified service."[7]

which requires or which is expected to require the services of an incumbent without interruption for a period of more than six months").

[6] The prior commissioner of the department, Scott Jackson, had expressed concerns with Senate Bill No. 941. Specifically, Jackson was concerned that the bill may have the unexpected effect of causing confusion relating to the position of first assistant commissioner.

[7] See General Statutes § 12-389 (a) ("[t]he commissioner shall appoint a First Assistant Commissioner of Revenue Services, who shall be an attorney at law, and shall be the attorney in charge of succession and transfer taxes and shall have authority to act as attorney for the commissioner in all

(Internal quotation marks omitted.) No one at the department reviewed this language before the plaintiff sent it to Chapman. Chapman forwarded the plaintiff's email to the members of the Judiciary Committee. Chapman believed that the plaintiff was communicating the proposal on behalf of the department and that the draft language had been reviewed by the commissioner.

On February 6, 2020, Nicole Lake, director of legislative affairs for the Office of the Attorney General, wrote to Ernest Adamo, a legislative liaison with the department, regarding her concerns with the plaintiff's proposed language, specifically her concern that it would shift the authority to appoint a first assistant commissioner from the commissioner of the department to the Attorney General, that the first assistant commissioner position would be exempt from classified service, and that the department would not retain the authority to litigate its own tax cases in the Superior Court. The next day, Biello scheduled a team meeting, which was attended by the plaintiff, at which he gave verbal

matters relating thereto"); General Statutes § 12-389 (b) ("The Attorney General may delegate to the Commissioner of Revenue Services "the authority to appoint an attorney to represent the commissioner in matters relating to certain appeals to the Superior Court from an order, decision or determination or disallowance of the Commissioner of Revenue Services. The Attorney General may enter into a memorandum of understanding with the Commissioner of Revenue Services which shall list the types of appeals which are the subject of such delegation.")

The administrative record contains a memorandum of understanding, entered into in 2003, between the Office of the Attorney General and the department pursuant to § 12-389 (b), and it is undisputed that, since that time, the department has litigated its own tax cases pursuant to that memorandum under the first assistant commissioner.

The plaintiff asserted at oral argument before this court that, if she had not acted on the proposed legislation, § 12-389 would have been "fully repealed." We decline to engage in the speculation that the plaintiff invites. Furthermore, the dispositive fact remains that the plaintiff failed to disclose to Biello the proposed statutory language that she sent to Chapman, notwithstanding her knowledge of a direct order to do so.

instructions that any discussions or drafts concerning the succession tax or General Statutes § 12-389; see footnote 7 of this opinion; must come through him. The plaintiff did not inform Biello, or anyone else at the meeting, that she already had provided proposed language on that very legislation to Chapman. After the meeting, the plaintiff met with Biello alone and told him that there "may be" a proposal that would impact § 12-389. She did not, however, disclose to Biello at that time that she already had emailed proposed language to Chapman.

On February 9, 2020, Biello emailed sixteen department employees, including the plaintiff, to reiterate that anything involving the succession tax or § 12-389 had to go through him. On the morning of February 10, 2020, Chapman asked Biello about the succession tax bill that was going to be considered by the Judiciary Committee. Biello was unaware of the plaintiff's proposed changes to the succession tax and later was forced to testify in opposition to the bill, stating that he did not authorize the language concerning the appointment by the Attorney General of the first assistant commissioner position or the exemption from classified service for that position. The plaintiff's husband, Nathaniel Clark, testified in support of the legislation. Clark is not an employee with the department or a state employee.[8] Later on February 10, 2020, the plaintiff was placed on paid administrative leave, pending an investigation.

On March 4, 2020, the plaintiff was issued written notice of a predisciplinary hearing pursuant to *Board of Education* v. *Loudermill*, 470 U.S. 532, 546, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985), which was held on

---

[8] It is undisputed that the proposed legislation, which ultimately was submitted as raised House Bill No. 5050, did not pass.

September 22, 2020.[9] The plaintiff appeared at the hearing and was represented by counsel. Following the hearing, the department formally notified the plaintiff by a letter dated September 29, 2020, that it was dismissing her from state employment for just cause pursuant to §§ 5-240-1a (c), 5-240-5a and 5-240-8a (b) of the Regulations of Connecticut State Agencies (regulations),[10] effective October 13, 2020. The September, 2020 letter stated that the department determined that the plaintiff engaged in wilful and egregious conduct that violated the department's Code of Ethics[11] and General Rules

[9] "[A] tenured public employee is entitled to oral or written notice of the charges against [her], an explanation of the employer's evidence, and an opportunity to present [her] side of the story before termination. . . . The opportunity to present one's side of the story is generally referred to as a *Loudermill* hearing." (Citation omitted; internal quotation marks omitted.) *AFSCME, Council 4, Local 2663* v. *Dept. of Children & Families*, 317 Conn. 238, 243 n.3, 117 A.3d 470 (2015).

[10] Section 5-240-5a (a) of the Regulations of Connecticut State Agencies provides: "An appointing authority may dismiss an employee for just cause."

Section 5-240-1a (c) of the Regulations of Connecticut State Agencies provides in relevant part that " '[j]ust cause' means any conduct for which an employee may be suspended, demoted or dismissed and includes, but is not limited to, the following . . . (8) Deliberate violation of any law, state regulation or agency rule . . . (11) Neglect of duty, or other employment related misconduct . . . (12) Insubordination . . . [or] (13) Engaging in any activity which is detrimental to the best interests of the agency or of the state. . . ."

Section 5-240-8a (a) of the Regulations of Connecticut State Agencies provides in relevant part: "Within one week of a decision by the appointing authority to suspend an employee, demote an employee except at the request of an employee or dismiss an employee, the appointing authority shall provide written notice, in addition to any notice that may have been provided in accordance with the prediscipline procedure, to the employee stating the appointing authority's decision, the reasons for the decision, the effective date of the decision and informing the employee of any right to further review or appeal that the employee may have pursuant to either . . . [§] 5-202 or an applicable collective bargaining agreement."

[11] The record contains the plaintiff's signed acknowledgment of the department's Code of Ethics, which states: "Proper functioning of the government requires that the agency/department, the courts, other state agencies and the public be able to rely fully on the truthfulness of government employees in matters of official interest."

of Conduct, as well as § 5-240-1a (c) (8), (11) and (13) of the regulations.

Thereafter, the plaintiff filed a timely grievance with the board, challenging the termination of her employment. Pursuant to § 5-202 (j),[12] the grievance was initially brought to the Office of Labor Relations for a "step three"[13] conference. At the conference, the Office of Labor Relations heard the parties, through counsel, on their positions regarding whether the department had reasonable cause to terminate the plaintiff's employment, and reviewed documentation submitted by the parties. The Office of Labor Relations denied the grievance in a written decision dated December 29, 2020.

The plaintiff thereafter filed a timely appeal from the denial of her grievance to the board pursuant to § 5-202 (a). The board held an evidentiary hearing that spanned six days, during which it heard testimony from several witnesses, including the plaintiff, and received voluminous documentary evidence. The plaintiff was represented by counsel throughout the grievance process and was permitted to present evidence and to cross-examine witnesses. The parties also filed post-hearing briefs and reply briefs.

The board subsequently issued a decision concluding that the termination of the plaintiff's employment was

---

[12] General Statutes § 5-202 (j) provides in relevant part: "The third level of the preliminary review procedure preparatory to the filing of an appeal from an alleged grievable action under subsection (a) of this section including dismissal, demotion or suspension shall be the Secretary of the Office of Policy and Management or the secretary's designated representative. . . . The Secretary of the Office of Policy and Management or the secretary's designated representative shall reply to such employee not later than thirty calendar days from the date such grievance is received or not later than fifteen calendar days from the date of a meeting convened for the purpose of reviewing such grievance, in which case such meeting shall be convened not later than thirty calendar days from the date such grievance is received."

[13] A "step three" conference constitutes the third level of the preliminary review procedure under § 5-202 (j), before an alleged grievable action may be appealed to the board. See footnote 12 of this opinion.

not arbitrary or unreasonable pursuant to § 5-202 (c). The board noted that, in the common law of labor arbitration, a "seven step test" is "well established as a guide to determine whether just cause exists for the various levels of discipline that an employer may impose on a worker for misconduct.[14] These criteria are often applied by the [board] in its analysis of disciplinary cases. For 'egregious' misconduct, the severest discipline (termination) may be imposed without considering so-called 'progressive discipline.' " (Footnote added.) The board found, on the basis of Biello's testimony, which it found credible, that the plaintiff's proposed legislation "struck at the heart" of the department's operations and undermined its ability to appoint its own first assistant commissioner. The board found that the plaintiff's conduct was motivated by her personal interests, rather than those of the department. Furthermore, the board stated that the plaintiff's lack of disclosure over four days was an "intentional act of serious misconduct, a breach of the employee-employer relationship and a breach of trust." The board therefore concluded that it found two levels of serious misconduct: the plaintiff's failure to comply with Biello's instructions, and her personal motives in drafting the proposed legislation. It found that the plaintiff's misconduct was egregious, and, therefore, "progressive discipline was not a factor." Accordingly, the board denied the plaintiff's grievance and found that the plaintiff's employment was properly terminated for just cause.

[14] The seven step test was first articulated in 1966 by "Arbitrator Carroll R. Daugherty [who] issued an award in *Enterprise Wire Co.* v. *Enterprise Independent Union*, 46 Lab. Arb. Rep. (BNA) 359 (Mar. 28, 1966), where, in the absence of a contractual definition of just cause, he established a seven prong[ed] approach to determine whether just cause existed for discipline. Soon thereafter, other arbitrators adopted these standards, labeling them 'Daugherty tests of just cause.' " *Hartford Municipal Employees Assn.* v. *Hartford*, 128 Conn. App. 646, 662, 19 A.3d 193 (*Flynn, J.*, dissenting), cert. denied, 301 Conn. 934, 23 A.3d 730 (2011).

The plaintiff thereafter filed an administrative appeal from the board's decision to the Superior Court pursuant to General Statutes §§ 4-183 and 5-202 (m).[15] Following a hearing, the court upheld the board's decision and dismissed the plaintiff's administrative appeal. In its memorandum of decision dated September 14, 2023, the court concluded that there was substantial evidence in the record to sustain the board's decision finding just and reasonable cause for the termination of the plaintiff's employment on the basis of insubordination and the plaintiff's proposing legislation for the purpose of furthering her own interests, rather than the department's or the state's interests. The court stated that the plaintiff's unilateral actions in proposing the legislation provided substantial evidence of a deliberate disregard of Biello's instructions. The court noted that the fact that the plaintiff sent the proposed language on February 3, 2020, before Biello's instructions on February 7, and repeated on February 9, 2020, did not immunize her actions because "[a]ny reasonable, good faith interpretation by such an employee of the acting commissioner's instruction that all legislations regarding the succession tax go through [him] would include the idea that . . . Biello was instructing that he be informed of legislative proposals on that very issue that had been sent to the General Assembly just days before." The court also found substantial, "overwhelming" evidence in the record that the plaintiff acted in pursuit of her own personal motives by drafting the proposed legislation to remove the first assistant commissioner from

---

[15] General Statutes § 5-202 (m) provides in relevant part: "Either the Secretary of the Office of Policy and Management or any employee or group of employees aggrieved by a decision of the Employees' Review Board may appeal from such decision in accordance with section 4-183. . . ."

General Statutes § 4-183 (a) provides in relevant part: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section. . . ."

classified service. Therefore, the court dismissed the plaintiff's administrative appeal. This appeal followed. Additional facts will be set forth as necessary.

The legal principles governing our review of decisions of administrative agencies are well established. "[J]udicial review of an administrative agency's action is governed by the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq., and the scope of that review is limited. . . . When reviewing the trial court's decision, we seek to determine whether it comports with the [UAPA]. . . . [R]eview of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. . . . Conclusions of law reached by the administrative agency must stand if . . . they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . . The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of [its] discretion. . . .

"Moreover, [a]lthough the interpretation of statutes is ultimately a question of law . . . it is the well established practice of [our appellate courts] to accord great deference to the construction given [a] statute by the agency charged with its enforcement. . . . It is also well established that courts should accord deference to an agency's formally articulated interpretation of a statute when that interpretation is both time-tested and reasonable. . . . Our Supreme Court has determined, however, that the traditional deference accorded to an

agency's interpretation of a statutory term is unwarranted when the construction of a statute . . . has not previously been subjected to judicial scrutiny [or to] . . . a governmental agency's time-tested interpretation . . . ." (Citations omitted; internal quotation marks omitted.) *PMC Property Group, Inc.* v. *Public Utilities Regulatory Authority*, 189 Conn. App. 268, 273–74, 207 A.3d 114 (2019).

I

The plaintiff first claims that the court failed to utilize the proper "just cause" standard applicable to permanent state employees pursuant to General Statutes § 5-240 (c). Specifically, the plaintiff asserts that (1) the board and the court failed to "apply any of the seven accepted tests for determining 'just cause' in the context of terminating a permanent state employee's employment in the classified service," and (2) she was entitled to progressive discipline prior to the termination of her employment.[16] The defendants, however, argue that the plaintiff's assertions conflict with the statutory and regulatory definitions that the legislature has adopted for nonunion employees and that she was not entitled to progressive discipline or to the application of the common-law seven step test to determine just cause in the absence of any indication otherwise from the legislature. We agree with the defendants.

Although the parties agree that our review of this appeal is governed by the UAPA, they disagree as to the proper standard of review that should apply to this claim. The plaintiff contends that de novo review applies because her first claim requires this court to

---

[16] The plaintiff also asserts in her statement of issues that the court erred in "affirming the [board's] decision on alternat[ive] grounds." Upon our review, the plaintiff's brief contains no analysis of such a claim and, therefore, we decline to address it as it is inadequately briefed. See, e.g., *Sicignano* v. *Pearce*, 228 Conn. App. 664, 690–91, 325 A.3d 1127 (2024), cert. denied, 351 Conn. 908, 330 A.3d 881 (2025).

analyze the relevant statutes and regulations governing just cause for terminating a permanent employee, including § 5-240. The defendants counter that we must defer to the board's conclusions of law and assert that the board's interpretation of its "statutory obligations under § 5-202 (c) is time-tested because it has been formally articulated and applied for an extended period of time." (Internal quotation marks omitted.) The defendants have not, however, argued that there is a time-tested agency interpretation of either § 5-240 or the regulations promulgated therewith that define "just cause," or that the plaintiff's claim that the seven step test should be applied to § 5-240 has been subjected to judicial scrutiny.

We conclude that the defendants' argument conflates § 5-202 (c), which limits the board's scope of review to determining whether the "action appealed from was arbitrary or taken without reasonable cause," with the merits of the plaintiff's claim, namely, that the department terminated her employment without just cause pursuant to § 5-240. In order to determine whether the department's actions were "arbitrary or taken without reasonable cause," the board held a hearing pursuant to § 5-202 (c) and issued its own factual findings within the scope of its review, to assess the department's conclusion that there was just cause to terminate the plaintiff's employment. The board's decision states that the parties agreed that the issues before it were (1) whether the termination of the plaintiff's employment was for reasonable or just cause, and (2) "[i]f not, what shall be the remedy?" Therefore, we conclude that the issues of whether (1) a "just cause" standard must be met for the discipline of a managerial employee, and (2) "whether the traditional 'just cause' standard that utilizes the seven [part test] for determining whether 'just cause' exists applies to managerial employees who are permanent state employees in the classified service for

the state of Connecticut," raise questions of statutory interpretation, over which our review is plenary. See, e.g., *Meriden* v. *Freedom of Information Commission*, 338 Conn. 310, 320, 258 A.3d 1 (2021); see also, e.g., *Secretary of the Office of Policy & Management* v. *Employees' Review Board*, 267 Conn. 255, 262, 837 A.2d 770 (2004).

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and [common-law] principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Meriden* v. *Freedom of Information Commission*, supra, 338 Conn. 320–21.

We begin with the text of the relevant statute. Section 5-240 (c) provides in relevant part: "An appointing authority may dismiss any employee in the classified service when the authority considers the *good of the service will be served thereby*. . . ." (Emphasis added.) Section 5-240-5a (a) of the regulations provides that

"[a]n appointing authority may dismiss an employee for just cause." Section 5-240-1a (c) of the regulations specifically defines just cause as "any conduct for which an employee may be suspended, demoted or dismissed and includes, but is not limited to, the following . . . (8) [d]eliberate violation of any law, state regulation or agency rule . . . (11) [n]eglect of duty, or other employment related misconduct . . . (12) [i]nsubordination . . . [or] (13) [e]ngaging in any activity which is detrimental to the best interests of the agency or of the state. . . ."

We conclude, on the basis of the plain language of § 5-240 and § 5-240-1a (c) of the regulations, that a just cause standard governed the department's termination of the plaintiff's employment. See, e.g., *Wagner* v. *Connecticut Personnel Appeal Board*, 170 Conn. 668, 672, 368 A.2d 20 (1976) ("[u]nder [§] 5-240 . . . an employee cannot be dismissed arbitrarily or without reasonable cause" (citation omitted)).[17] In the present case, the plaintiff has not cited to any appellate authority, and we have found none, in which this court, or our Supreme Court, has definitively stated that the seven part test must be applied in every case concerning just cause in employment termination cases. Neither § 5-240 nor §§ 5-240-1a and 5-240-7a of the Regulations of Connecti-

---

[17] The plaintiff asserts that, at oral argument before the trial court, counsel for the defendants had argued that a just cause standard did not apply to her as a managerial employee. The plaintiff cites a portion of the transcript in which the defendants' counsel stated that "[t]he collective bargaining employees' rights to progressive discipline to just cause for discharge, the seven step test, those are negotiated between . . . with the union representing the employees. And, that is absent as applied to the plaintiff here, being a noncollective bargaining unit employee." (Internal quotation marks omitted.) We do not interpret counsel's statement as an assertion that the plaintiff was not subject to a just cause standard but, rather, that she was not entitled to progressive discipline. Moreover, the defendants have not disputed on appeal that permanent, nonunion state employees in the classified service, such as the plaintiff, are subject to termination of their employment by the department for just cause.

cut State Agencies mandate that progressive discipline must occur before proceedings to terminate an employee's employment. The plaintiff essentially asks us to graft additional language onto the applicable statutes and regulations that does not exist. It is well settled, however, that "[i]t is not the role of this court to engraft additional requirements onto clear statutory language." (Internal quotation marks omitted.) *Cochran* v. *Dept. of Transportation*, 350 Conn. 844, 865–66, 327 A.3d 901 (2024); see *PPC Realty, LLC* v. *Hartford*, 350 Conn. 347, 358, 324 A.3d 780 (2024); see also, e.g., *Secretary of the Office of Policy & Management* v. *Employees' Review Board*, supra, 267 Conn. 274 ("[I]t is axiomatic that the court itself cannot rewrite a statute to accomplish a particular result. That is the function of the legislature." (Internal quotation marks omitted.)). "[Courts] are not in the business of writing statutes; that is the province of the legislature. Our role is to interpret statutes as they are written. . . . [We] cannot, by [judicial] construction, read into statutes provisions [that] are not clearly stated." (Internal quotation marks omitted.) *Aldin Associates Ltd. Partnership* v. *State*, 230 Conn. App. 223, 249, 330 A.3d 613, cert. granted, 351 Conn. 911, 330 A.3d 882 (2025).

At oral argument before this court, the plaintiff argued that notice of the possible consequences of an employee's conduct is the "biggest issue in this case." The statutes and regulations governing the disciplinary process for employees such as the plaintiff, however, do not require that notice of the possible consequences of an employee's conduct be given before disciplinary proceedings may be commenced. Although notice of the possible consequences of an employee's conduct is one of the elements of the seven step test the plaintiff advocates, the seven step test is not mandated in § 5-240. It also is not included in the applicable regulation

that delineates the prediscipline procedures that must be followed prior to the termination of employment. See Regs., Conn. State Agencies § 5-240-7a (a). Prior notice of the decision to suspend an employee, including an opportunity to be heard pursuant to *Loudermill*, is required under § 5-240-7a of the regulations. As outlined previously, however, the record reveals that those required pretermination procedures were followed in the present case.[18]

In its decision, the board noted that it could have used the seven step test advocated by the plaintiff as guidance in determining whether just cause existed to

[18] To the extent the plaintiff seeks to raise claims that the administrative process provided by the department and the board violated her due process rights, such claims are abandoned due to inadequate briefing. Apart from arguing that she was entitled to "progressive discipline," which was not required by any governing statute or regulation, the plaintiff has not pointed to any other ways in which her due process rights were violated. See Regs., Conn. State Agencies § 5-240-7a. At one point in her brief, the plaintiff asserts that she was not provided with the full report of Kristen Brierley, an investigator for the department, prior to her *Loudermill* hearing, but she provides no meaningful analysis of why Brierley's redacted report, which was disclosed in full prior to the contested hearing before the board, deprived her of the ability to understand the charges raised against her.

Moreover, the plaintiff has not applied the traditional three part balancing test set forth in *Mathews* v. *Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), to determine "what safeguards the federal constitution requires to satisfy procedural due process." (Internal quotation marks omitted.) *Turn of River Fire Dept., Inc.* v. *Stamford*, 159 Conn. App. 708, 712 n.2, 123 A.3d 909 (2015). "It is well established that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [When] a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned." (Internal quotation marks omitted.) Id.; see also *Frauenglass & Associates*, *LLC* v. *Enagbare*, 149 Conn. App. 103, 110–11, 88 A.3d 1246 (federal due process claim was inadequately briefed when defendant failed to mention balancing test let alone include analysis of *Mathews* test as applied to facts of defendant's case), cert. denied, 314 Conn. 927, 101 A.3d 273 (2014). Accordingly, we deem any procedural due process claim abandoned due to inadequate briefing and decline to review it.

terminate her employment.[19] It did not, however, because the board determined that the application of the seven step test was not necessary in light of its finding that the plaintiff's conduct was "egregious,"[20] which was supported by substantial evidence in the record. See part III of this opinion; see also *Hannifan* v. *Sachs*, 150 Conn. 162, 166, 187 A.2d 253 (1962) (concluding that responsibility imposed on board to determine whether appointing authority has not acted arbitrarily or without reasonable cause "requires an exercise of judgment and discretion"). We decline the

[19] The plaintiff argues that the trial court incorrectly concluded that the seven step test to determine just cause was inapplicable because she was a nonunion employee. We agree with the board that the seven step test could have been used as guidance in the present case, even though the plaintiff was not a union employee. We conclude, however, that the board did not *have* to apply that test because it found that the plaintiff's conduct was egregious. Thus, any error relating to the court's conclusion that the seven step test could not have been applied to a nonunion employee was harmless because it does not affect our result. See *Board of Selectmen* v. *Freedom of Information Commission*, 294 Conn. 438, 456, 984 A.2d 748 (2010) (harmless error standard in civil case is whether improper ruling would likely affect result).

[20] The plaintiff asserts, without citation to authority, that "most cases that find egregious misconduct involve conduct that is inherently criminal in nature." She further asserts that even some criminal behavior is not sufficient for termination without progressive discipline, citing *State* v. *Connecticut Employees Union Independent*, 322 Conn. 713, 142 A.3d 1122 (2016). In that case, our Supreme Court held that an arbitrator did not violate public policy by reinstating an employee's employment, when the employee had smoked marijuana at work. Id., 716. That case is distinguishable, however, because the arbitrator specifically had noted that the employee "did not engage in . . . a breach of trust or show . . . a lack of character . . . ." (Internal quotation marks omitted.) Id., 719. In the present case, the board explicitly *did* find that the plaintiff's lack of disclosure was a breach of trust.

The plaintiff also relies on *Stratford* v. *AFSCME, Council 15, Local 407*, 315 Conn. 49, 105 A.3d 148 (2014), which involved a police officer's dishonest conduct. That case, too, is distinguishable, first, because it addressed a distinct procedural issue, namely, whether an arbitration award reinstating the officer violated public policy, and second, because the dishonesty at issue in that case did not compromise the officer's ability to perform his official duties and was not disruptive. Id., 50. In the present case, by contrast, the board found that the plaintiff's proposal, which she intended to conceal from Biello, "struck at the heart" of the department's operations.

plaintiff's invitation, therefore, to place a judicial gloss on § 5-240 that would be inconsistent with the legislature's clear statutory language. See, e.g., *State* v. *DeCiccio*, 315 Conn. 79, 149, 105 A.3d 165 (2014) ("[w]e previously have declined to place a gloss on a statute that contradicts its plain meaning"); *Keller* v. *Beckenstein*, 305 Conn. 523, 536–37, 46 A.3d 102 (2012) (same). This is particularly so given that the board is an administrative agency, and its scope of authority is strictly limited by statute. "An administrative agency, as a tribunal of limited jurisdiction, must act strictly within its statutory authority. . . . [An administrative agency] possesses no inherent power. Its authority is found in a legislative grant, beyond the terms and necessary implications of which it cannot lawfully function." (Citations omitted; internal quotation marks omitted.) *State* v. *State Employees' Review Board*, 231 Conn. 391, 406, 650 A.2d 158 (1994); see also *Turrill* v. *Erskine*, 134 Conn. 16, 23, 54 A.2d 494 (1947) (board's authority is limited to determination of whether appointing authority acted improperly).

Lastly, the plaintiff argues that "[t]he seven tests for determining 'just cause' is itself the subject of a treatise that is currently in its third edition . . . . A. Koven & S. Smith, [Just Cause: The Seven Tests (3d Ed. 2006)]," and asserts that our Supreme Court, in *AFSCME, Council 4, Local 1565* v. *Dept. of Correction*, 298 Conn. 824, 829–30, 6 A.3d 1142 (2010), "cited" the same seven step test. In that case, however, our Supreme Court merely listed the seven factors that the arbitrator had utilized "as *guidance* in her deliberations . . . ." (Emphasis added; internal quotation marks omitted.) *AFSCME, Council 4, Local 1565* v. *Dept. of Correction*, supra, 829. Our Supreme Court did not, however, state that these factors must be applied in all cases in which just cause is at issue. Id., 829–30. We decline the plaintiff's

invitation to do so now and, accordingly, reject the plaintiff's claim.

II

The plaintiff also asserts that the court made certain improper factual findings that were not made by the board. We are not persuaded.

We first set forth the applicable standard of review. "When reviewing the trial court's decision, we seek to determine whether it comports with the [UAPA]," and we defer to the board's factual findings, unless they are unsupported by substantial evidence. (Internal quotation marks omitted.) *PMC Property Group, Inc.* v. *Public Utilities Regulatory Authority*, supra, 189 Conn. App. 273–74; see also *Gonzalez* v. *State Elections Enforcement Commission*, 145 Conn. App. 458, 464, 77 A.3d 790 ("[o]ur task is to review the court's decision to determine whether it comports with the . . . [UAPA] . . . and whether the court reviewing the administrative agency acted unreasonably, illegally, or in abuse of discretion" (internal quotation marks omitted)), cert. denied, 310 Conn. 954, 81 A.3d 1181 (2013).

First, the plaintiff contends that the court made improper legal and factual findings with respect to insubordination. Specifically, she asserts that insubordination was not one of the grounds for just cause enumerated in § 5-240-1a (c) of the regulations that the board explicitly found in determining that there was just cause to terminate her employment. We conclude that, even if the board did not use the exact word "insubordination," it found that the plaintiff's actions constituted misconduct because she "def[ied] a direct instruction by the boss . . . ." The trial court looked to the dictionary definition of "insubordination," which defines the term as "a willful disregard for an employer's instructions." Black's Law Dictionary (11th Ed. 2019) p. 953. As the term "insubordination" was not specifically

defined in § 5-240-1a (c) (12) of the regulations, it was proper for the trial court to look to the common usage of that term as defined in the dictionary.[21] See, e.g., *Greenwich Retail* v. *Greenwich*, 233 Conn. App. 78, 87, A.3d (2025). The court's determination that there was substantial evidence in the record that just cause existed to terminate the plaintiff's employment on the basis of her insubordination was reasonable and grounded in the board's factual findings. Moreover, in addition to the board's finding that the plaintiff defied a direct order from Biello, the board also found that the plaintiff's conduct was in furtherance of her own interests, rather than those of the department, because her proposed legislation "struck at the heart" of the department's operations. Thus, the trial court determined that there was also substantial evidence in the record, and we agree, for the termination of the plaintiff's employment on the basis of her engagement in activities that were detrimental to the best interests of the department, pursuant to § 5-240-1a (c) (13) of the regulations. See part III of this opinion.

Second, the plaintiff argues that the court improperly found that she "wilfully disregarded the [department's] preexisting policy that proposals affecting [department] operations be shared with the agency and be approved by the commissioner." (Internal quotation marks omitted.) We agree with the defendants that, even if the court erroneously found that there was a preexisting rule that the plaintiff must obtain the approval of Biello before introducing draft legislation, any error was not harmful because such a rule *was* articulated by Biello on February 7, 2020, and she failed to disclose the fact

---

[21] The plaintiff asserts that the court should have relied on the "standard that has been used by the state of Connecticut" in determining insubordination. In support of this argument, the plaintiff cites to an employees' manual for the state Department of Transportation, which discusses principles of progressive discipline. The defendants argue, and we agree, that this manual was not applicable to employees of the plaintiff's department.

that she already had proposed such legislation without Biello's approval. See, e.g., *Board of Selectmen* v. *Freedom of Information Commission*, 294 Conn. 438, 456–57, 984 A.2d 748 (2010) (concluding that agency was not entitled to relief because any impropriety on part of trial court was harmless). The board's finding that the plaintiff's failure to disclose her proposal constituted just cause for her termination is supported by substantial evidence. See part III of this opinion. The plaintiff's arguments are, therefore, unavailing.

## III

The plaintiff next claims that the board made factual findings that are unsupported by substantial evidence in the record.[22] Specifically, the plaintiff challenges the board's findings that (1) she failed to inform Biello or anyone else at the February 7, 2020 meeting that she had already submitted draft language in connection with the succession tax bill, (2) her lack of disclosure of the proposed legislation was an intentional act of serious misconduct, and (3) the testimony of her husband, Nathaniel Clark, in support of her proposed legislation was the result of her improper influence. The defendants counter that the evidence in the record supports the conclusion that the plaintiff's actions were against the interests of her department and were in contravention of Biello's clear directives that any proposed legislation come through him. We agree with the defendants.

We begin by setting forth the standard of review governing this claim. As noted previously, "under the UAPA, judicial review of an agency's factual determination is governed by the substantial evidence standard,

---

[22] In this section of her brief, the plaintiff revisits her argument that the court improperly found that there was a preexisting rule that the plaintiff was required to obtain approval from her superiors before introducing legislation. In part II of this opinion, we rejected the plaintiff's contention. We need not address that issue again here.

which is highly deferential and permits less judicial scrutiny than a clearly erroneous or weight of the evidence standard of review. . . . Under the substantial evidence standard, [t]he question is not whether the evidence would also support a different, or even inconsistent conclusion but whether there is substantial evidence to support the [agency's] decision . . . ." (Citation omitted; footnote omitted; internal quotation marks omitted.) *Commission on Human Rights & Opportunities* v. *Dance Right, LLC*, 230 Conn. App. 53, 75, 329 A.3d 1008 (2025).

The following additional facts are relevant to our resolution of the plaintiff's claim. At the hearing before the board, the defendants produced an investigative report by Kristen Brierley. That report, which was admitted into evidence before the board, reveals that Brierley interviewed Adamo, who expressed being " 'flabbergasted' " at the plaintiff's proposed language. Sherman had also expressed concerns with the language and, in response, the plaintiff told Sherman that she would speak to Biello about the proposed language. When she did meet with Biello in a one-on-one meeting on February 7, 2020, however, she did not tell him that she had already sent proposed language to Chapman. Rather, she indicated that " 'there may be' " a proposal that would impact § 12-389. Biello testified: "She didn't say that it was the CBA or anything like that. She just said she's aware there may be another piece of legisl[ation] that affects [§] 12-389, and that if I liked, she could draft some language for the department." On February 10, 2020, the plaintiff sent an email to Paul Mounds in the Office of the Governor, which stated: "[Biello] has already made it clear that he fully supports our current [f]irst [a]ssistant [c]ommissioner . . . [Bucari], and will seek legislation to protect him and his job. . . . Unless the administration wants to fully support . . . Bucari in keeping his position, the governor's office will

need to weigh in on whether it wants to keep the position of [f]irst [a]ssistant [c]ommissioner, what that role should entail . . . and whether it should be made clear that the position is intended to be an appointed position."

The plaintiff argues that the board improperly found that she "failed to inform . . . Biello, or anyone else at the [February 7, 2020] meeting, that she had already provided language to . . . Chapman on the succession tax and [§] 12-389." (Internal quotation marks omitted.) The plaintiff states that she spoke with Adamo and Sherman "about the legislative proposal and her discussions with . . . Chapman prior to the [department] meeting. We conclude that, even if the plaintiff had discussed the proposed language with Adamo and Sherman, there is substantial evidence in the record that she did *not* disclose that language with the one person who issued the directive to the department that any proposals relating to § 12-389 must come through him: Biello.

The plaintiff also challenges the board's finding that her "lack of disclosure over [four] days was an intentional act of serious misconduct."[23] (Internal quotation marks omitted.) The plaintiff asserts that this finding was not supported by the record because she asked to meet with Biello on February 7, 2020, after the team meeting; however, the record reveals that, during that meeting, the plaintiff still did not disclose to Biello that

---

[23] The plaintiff also argues that, although Biello sent the department an email on Sunday, February 9, 2020, reiterating his directive, she did not receive the email until the next day, February 10, 2020, at which time she was placed on paid administrative leave. The plaintiff, however, was present at the February 7, 2020 meeting, at which time Biello verbally gave the directive that any legislation relating to § 12-389 must come through him. Moreover, on that same date, the plaintiff met with Biello alone, at which time she could have disclosed the proposed legislation but did not. Accordingly, we reject the plaintiff's contention that she had "fewer than eight business hours" within which to comply with Biello's directive.

*she* had sent draft legislation to Chapman that would have fundamentally changed the department's operations. The board credited Biello's testimony that the plaintiff's proposal "struck at the heart" of the department's operations, and we do not disturb the board's credibility determinations on appeal. See, e.g., *Idlibi* v. *State Dental Commission*, 212 Conn. App. 501, 518–19, 275 A.3d 1214 ("It is well established that it is the exclusive province of the trier of fact to make determinations of credibility, crediting some, all, or none of a given witness' testimony. . . . [A]n administrative agency is not required to believe any witness . . . . As a reviewing court, we may not retry the case or pass on the credibility of witnesses. . . . We must defer to the trier of fact's assessment of the credibility of the witnesses that is made on the basis of its firsthand observation of their conduct, demeanor and attitude." (Internal quotation marks omitted.)), cert. denied, 345 Conn. 904, 282 A.3d 980 (2022).

The plaintiff also challenges the board's discussion of her husband Nathaniel Clark's testimony as "guilt by association . . . ." (Internal quotation marks omitted.) In its written decision, the board stated that Nathaniel Clark, a computer engineer, who "had never appeared before at a legislative committee," attended the hearing accompanied by the plaintiff, to support the proposal that she drafted. The board noted Nathaniel Clark's testimony before the Judiciary Committee that Bucari was "problematic" and that protecting his position as first assistant commissioner would be "galling." (Internal quotation marks omitted.) As the plaintiff herself has conceded, her relationship with Bucari was poor. The board stated that Nathaniel Clark "could only have been influenced by [the plaintiff] in personally attacking Bucari." We interpret the board's discussion relating to Nathaniel Clark as noting evidence in the record that reasonably supported its conclusion that the plaintiff

was motivated by her own personal interests in drafting the legislation, rather than those of the department, which was one of the grounds for just cause enumerated in § 5-240-1a (c) (13) of the regulations.

Moreover, in light of the evidence in the record, we cannot say that the board acted unreasonably, illegally or in abuse of its discretion. The board's finding that the termination of the plaintiff's employment was for just cause was supported by substantial evidence in the administrative record. There is substantial evidence that the plaintiff engaged in serious misconduct by failing to comply with Biello's clear instructions. Biello testified before the board that, on February 7, 2020, he held a team meeting at which he "made it verbally clear if there was to be any discussion regarding the succession tax or if anyone was asked to provide input or draft anything . . . that it needed to come through me . . . ." As stated previously, the board credited Biello's testimony, and we do not disturb that credibility determination on appeal. See *Idlibi* v. *State Dental Commission*, supra, 212 Conn. App. 518–19. Even when the plaintiff met with Biello alone after the February 7, 2020 meeting, she did not disclose that she had sent language to Chapman but stated instead that there " 'may be' " a proposal that could impact § 12-389. Notwithstanding the plaintiff's claim that she had fewer than eight business hours to comply with Biello's directive, she was still able to email the Office of the Governor on Monday, February 10, 2020, instead of Biello, about the legislation.

There also was substantial evidence to support the board's finding that the plaintiff's actions were motivated by her own personal motives, rather than the best interest of the department. Regs., Conn. State Agencies § 5-240-1a (c) (13). The personal animus between the plaintiff and Bucari, who was the first assistant commissioner and held the very position the plaintiff's proposed

legislation sought to take away from the department's control, is not disputed. The plaintiff admitted that she sent the legislation at issue to Chapman using her personal email address, and, although she stated at oral argument before this court that her actions were taken in her official capacity, the board reasonably found that the use of her personal email and cell phone to communicate with Chapman, rather than through official department lines of communication, constituted evidence that she intended to conceal her actions from Biello. These facts all supported the board's conclusion that the plaintiff's actions were detrimental to the department she was hired to serve and are supported in the record. Accordingly, we conclude that there was substantial evidence in the record to support the termination of the plaintiff's employment from state service for just cause.

The judgment is affirmed.

In this opinion the other judges concurred.